In re WRIGHT.
No. 23744.

District Court, N. D. California.
Nov. 10, 1942.

640

Cecil Wright, in pro. per.

A. J. Zirpoli, U. S. Atty., of San Francisco, Cal., for the Government.

DENMAN, Circuit Judge.

■ Prisoner Wright's petition for a writ of habeas corpus, addressed to me as such circuit judge, leading to a hearing and this decision that he be released from the United States Penitentiary at Alcatraz, California, a penitentiary situated in this circuit, was preceded by his three petitions containing similar allegations, separately addressed to each of the United States District Judges for the Northern District of California. All were denied. Hence is declined the exercise of any discretion to refuse to consider Wright's present petition, which may be permitted under such decisions as United States v. Hill, 3 Cir., 71 F. 2d 159, and Sweetney v. Johnston, 9 Cir., 121 F.2d 445.

Wright's second petition was not heard by the district judge to whom it was ad-

dressed.[1] He attempted to appeal from the discharge of the writ in that proceeding, but his appeal was frustrated because his petition to proceed in forma pauperis was denied by the district judge, who decided it against him on the ground Wright's claims were without merit.

The judge so denying a proceeding forma pauperis, heard the third petition and denied it. Wright, a pauper, concluded it useless again to initiate forma pauperis proceedings before him.

The Government contends that the making of such a second attempt to prosecute an appeal is a condition precedent to his right to have this consideration of his fourth petition. The law places no such limitation on the consideration of the claimed wrongful imprisonment. If there be a discretion to refuse to consider the petition in these circumstances, its exercise is declined. One cannot refuse to consider a petition in which, as developed at the hearing, the merits finally appear so clear, however much the petitioner may have failed to make them clear in the other proceedings.

Wright also petitioned to proceed here in forma pauperis, which petition should be granted.

At the present hearing, all the prior proceedings and the evidence there adduced were admitted as evidence on the issues joined by the Warden's return to the fourth proceeding. The Warden's return claimed the right of petitioner's custody by virtue of two consecutive sentences, adjudged on September 27, 1930, by the United States District Court for the Eastern District of Illinois. The sentences were to the penitentiary at Leavenworth, Kansas, to which Wright was taken on October 31, 1939, and from which he was transferred to that at Alcatraz, California.

The first of the federal sentences, for 10 years, was given after trial and verdict. The second, for 5 years, after a plea of guilty.

Other defendants were convicted with Wright and the sentences of all provided, "said sentences to begin upon the expiration of the sentences which said defendants are now serving in the Southern Illinois Penitentiary." This penitentiary is situated at Menard, Illinois, from which Wright had been temporarily released in September, 1930, for his trial in the federal court.

Wright contends that the clause beginning with "which" is descriptive of the entire Illinois sentence which has not yet terminated, and which he now should be serving on parole in the custody of the Illinois officials. Hence, he claims the federal sentences have not commenced and the Warden has no right to his custody.

The Warden contends that the district court intended that the federal sentences were to begin when Wright was released from the Illinois penitentiary, whether temporarily or permanently, and even if, here nine years later, Wright was in the custody of the Illinois officials on parole. The Warden's position necessarily is that, by the use of the phrase "which said defendants are now serving in the Southern Illinois Penitentiary," it was not intended merely to describe a particular Illinois sentence to distinguish it from some other sentence.

However, it appears that there was evidence before the federal court from which it could be inferred that petitioner had another Illinois sentence to another place of confinement, Joliet, Illinois, upon which he was on parole when the sentence to the Southern Illinois Penitentiary was adjudged. The phrase of the federal sentence refers to the sentence which Wright is "*now* serving in the Southern Illinois Penitentiary," at Menard, and thus distinguishes it from the sentence of Joliet.

It also appears from the evidence, and is admitted by the Government, and is so found, that on October 31, 1939, when Wright, after nine years' imprisonment in the Southern Illinois Penitentiary, was taken into custody in Illinois by the United States Marshal for the purported service of these federal sentences, he was serving, on parole, after the nine years' imprisonment, a sentence for not less than one year and not more than life for robbery with a dangerous weapon. Smith-Hurd Stats. c. 38, § 501, Cahill Illinois Revised Stat.1929, Criminal Code, Ch. 38, § 515. This sentence, as all Illinois indeterminate sentences, consisted in part in his custody in the Illinois penitentiary and in part on parole in the custody of the officers of the Illinois Department of Public Welfare. The penitentiary serv-

---

[1] Though each petition was addressed to a separate judge, Wright headed them with the name of the district court and they were treated as if addressed to the court.

ice may be resumed after some time on parole.[2]

▮ In this custody by the state officials of the prisoner on parole, the Illinois law is like that of the United States.

"* * * The parole authorized by the statute does not suspend service or operate to shorten the term. While on parole the convict is bound to remain in the legal custody and under the control of the warden until the expiration of the term, less allowance, if any, for good conduct. While this is an amelioration of punishment, it is in legal effect imprisonment. The sentence and service are subject to the provision of section 6 that if the parole be terminated the prisoner shall serve the remainder of the sentence originally imposed without deduction for the time he was out on parole." Anderson v. Corall, 263 U.S. 193, 196, 44 S.Ct. 43, 44, 68 L.Ed. 247.

▮ With this evidence and finding that Wright was in the custody of the state officials when the United States Marshal seized him for his present imprisonment, any presumption that the Marshal must have done his duty and hence that the Illinois sentence had expired and the federal sentence begun has no application.[3]

▮ Wright admits that he was surrendered by Illinois to serve the federal sentences before the expiration of the Illinois sentence referred to in the federal sentence. However, the question here is not concerned with the transfer of Wright from the Illinois officials to the federal officer. That is a matter of concern solely between the two sovereignties and of which Wright cannot complain.[4] The question is whether, when the United States Marshal seized Wright, regardless of how and where, the federal sentences had begun to run. If they had not, his seizure was not warranted and Wright should be released.

Though the evidence shows the reason why the federal sentence was cast in a form to make certain which of the two Illinois sentences it was to follow, the Warden contends the phrase of the federal sentences that they are "to begin upon the expiration of the sentences which said defendants are now serving in the Southern Illinois Penitentiary," does not mean exactly what it says. He would have it construed as if after the word "expiration," the words "of the penitentiary portion," should be inserted. As so revised, the Warden would have the sentence read, "to begin upon the expiration [of the penitentiary portion] of the sentences which said defendants are now serving in the Southern Illinois Penitentiary." He could not contend that it meant that Illinois had two sentences on Wright's conviction of robbery, one for imprisonment which terminated on the change of custody from imprisonment to parole, and another which began with the custody under parole.

▮ The Warden's contention does violence to the plain language of the sentence. However, were it correct, the federal sentence would be void for uncertainty. The validity of the sentence must be determined by the facts existent at the time it was made. There was not then, and is not now, any treaty between the United States and Illinois that Illinois prisoners in the custody of its officials would be surrendered on demand of the United States. There was not then, nor is there now, any law of Illinois requiring such surrender on demand of the United States. The most that a federal district court, looking forward

[2] Smith-Hurd Stats. c. 38, § 807, ch. 38 § 801, Illinois Criminal Code, Cahill Revised Stat. 1929. "Rules for Parole. The said Department of Public Welfare shall have power, and it shall be its duty, to establish rules and regulations under which prisoners in the penitentiary * * * may be allowed to go upon parole outside of the penitentiary * * *: Provided, that no prisoner or ward shall be released from either the penitentiary or * * * until the Department of Public Welfare shall have made arrangements or shall have satisfactory evidence that arrangements have been made for his or her honorable and useful employment while upon parole * * *: And, provided, further, that all prisoners and wards so temporarily released upon parole, shall, at all times, until the receipt of their final discharge, be considered in the legal custody of the officers of the Department of Public Welfare, and shall, during the said time, be considered as remaining under conviction for the crime or offense of which they were convicted and sentenced or committed and subject to be taken at any time within the enclosure of such penitentiary, reformatory and institution, herein mentioned. * * *" (Emphasis supplied.)

[3] Cf. Wall v. Hudspeth, 10 Cir., 108 F. 2d 865, 867, where the record was silent as to what the situation was when the prisoner was seized.

[4] Ponzi v. Fessenden, 258 U.S. 254, 265, 42 S.Ct. 309, 66 L.Ed. 607, 22 A.L.R. 879.

from the date of its sentence, could hope for was that at some time an agreement might be arrived at between the two sovereignties for the surrender of the Illinois prisoner to the United States Marshal.

Looking forward from the day of sentencing, nothing could be more uncertain to the federal court than that sometime during Wright's Illinois sentence, possibly for life, the following contingencies would happen: (a) that he would be released from the penitentiary on parole, and (b) that *prior to that date* an agreement would be made between the two sovereignties whereby Illinois would surrender its right to Wright's custody during parole and turn him over to the United States. Of course, the federal sentence could not have its beginning predicated upon the expectancy that the United States would violate the state's custody and seize Wright while on parole without the state's consent.

The Illinois indeterminate sentence law with its parole provision is aimed at the restoration of the prisoner to a useful place in the community. The law itself provides for the finding of some "honorable and useful employment while upon parole."[5] It provides for supervision by the Department of Public Welfare during such employment, with a view to restoration of the prisoner to his liberty when, upon evidence to the Department, it appears he "will remain at liberty without violating the law and that his or her final release is not incompatible with the welfare of society." Smith-Hurd Stats. c. 38, § 810, Ch. 38, § 804, Illinois Criminal Code, Cahill Illinois Revised Stat.1929.

It is no fanciful conjecture to any one familiar with the long prevalent views of those interested in the reform of persons convicted of crime, that the Illinois Department of Public Welfare, in office at the time of release of any prisoner on parole, might insist that the benevolent purposes of the Act would be served best by his continuance under the Department's reform-ing supervision, rather than by his surrender to another sovereignty for incarceration in its penitentiary. Such a board well could consider that when its reform attempts were successful, the reformed man would be in a position to seek executive clemency from the other sovereignty.

That a board would be less likely so to regard Wright, with his several convictions, does not make certain that Illinois, nine years later, would agree to his surrender to the United States. The litigation of this circuit for the last decade shows there is no measuring rod to determine what may or may not be done by administrative bodies in the ardent pursuit of social reforms. The after-wisdom of the fact that there happened to be a board which surrendered Wright, does not make the federal sentence any more certain when given.

Since the federal sentence ties itself to the indeterminate sentence and parole provision of the law of Illinois, the Warden's claimed construction of the beginning of the federal sentence would have to read "upon the termination of the imprisonment portion of the Illinois sentence *if the Illinois authorities will then surrender their custody and give up the prisoner to the United States.*" Since, as seen, there is no certainty of such surrender, the federal sentences so construed would be void.

▆▆▆▆ I do not agree with the Warden's construction. The true construction makes the federal sentences valid. This would require that construction if there were any ambiguity in their phraseology, which there is not. They plainly mean that they are to begin at the termination of the whole Illinois sentence, not at its first penitentiary period.[6] That sentence may be terminated in a proceeding before the Department of Public Welfare in which the Department finds the statutory requirements are satisfied and orders Wright's discharge from his commitment, which order is approved by the Governor.[7] Here,

---

[5] Footnote 2, supra.

[6] Assuming that a sentence beginning at the termination of the imprisonment and running through the time when by negotiation, perhaps through years, Illinois finally surrendered him, were valid and the sentences actually adjudged were ambiguous and permitted either that interpretation, or that they began at the termination of the entire Illinois sentence, the uncertainty of the former interpretation would require the adoption of the latter.

[7] Chg. 38 § 804, Illinois Criminal Code, Cahill Illinois Revised Stat.1929. Complete Discharge of Paroled Prisoner or Ward. "* * * whenever it shall be made to appear to the satisfaction of the Department of Public Welfare that any prisoner or ward has faithfully served his or her term of parole and the Department of Public Welfare shall have information that such prisoner or ward can safely be trusted to be at liberty and that his or her final release will not be incompatible with

unlike the uncertainty of an agreement between the two sovereignties, for which there is no provision in the law creating the sentence, the termination of the Illinois sentence is determinable by the fixed procedure of the sentencing statute.

Wright contends that because the termination of the Illinois sentence is fixed by events so occurring in its parole period, the federal sentences are uncertain as to their beginning. If his contention be correct, no sentence may run consecutively on a prior sentence of any of the many jurisdictions which have indeterminate sentence laws.

This contention is not maintainable. Every indeterminate sentence ends, either at its extreme period or at some time prior thereto, when definite statutory provisions have been satisfied. In this respect, such sentences are no more indefinite as to termination than is a federal sentence, say, for forty years which may sooner be terminated by the allowance of good behavior credits. If the Warden or controlling officer or board allow *all* the credits, the forty year sentence will terminate at the end of, say, twenty-six years. When the consecutive sentence is adjudged, it cannot be said that all, or indeed any, of the credits on the prior sentence will be earned. The consecutive sentence may commence at any time in the fourteen years between twenty-six and forty years after the prior sentence is given. Just as in the so-called indeterminate sentence, the terminal date is determinable on the subsequent action of persons authorized so to do. Such consecutive federal sentences are held to have the necessary certainty. Blitz v. United States, 153 U.S. 308, 317, 14 S.Ct. 924, 38 L.Ed. 725. Wright's federal sentences are not void because of uncertainty as to the date of their commencement,—that is, after the full period of the Illinois sentence, including his custody both in prison and on parole by the Illinois officials.

Wright's incarceration in Leav-enworth and Alcatraz before his federal sentences commenced, has been without authority. His proof of the facts has made of no value to him the several years spent there which, with good behavior credits, nearly fulfilled his five year sentence. His fifteen years of federal sentences will have to be served after the termination of the Illinois sentence, unless his contention be later maintained that his ten year sentence is invalid.

Wright claims the ten year federal sentence is void because the attorney assigned him by the district court also represented other persons tried with him who had given confessions used at the trial, which confessions involved his participancy in the crime charged. He claims such an attorney would prejudice him with the jury and that he would not be free to conduct a defense with the singleness of purpose the law requires. Glasser v. United States, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680.

There is no evidence upon which Wright's five year sentence, coming after a signed confession to the federal officers and a plea of guilty, may be held invalid. Not having served that sentence, the claimed invalidity of the ten year sentence cannot be entertained in a habeas corpus proceeding. McNally v. Hill, 293 U.S. 131, 55 S.Ct. 24, 79 L.Ed. 238.

Wright's petition to proceed in forma pauperis is ordered granted. He should be discharged from the custody of the Warden; but, pending appeal from this decision, he may be enlarged upon recognizance with security in the amount of $5,000 for appearance to answer the judgment of the appellate court, provided that unless appeal be taken within ten days from the filing of this order with the Clerk of the United States District Court for the Northern District of California, he shall be enlarged without such recognizance. In the absence of appeal, he shall be discharged from the Warden's custody.

the welfare of society, the Department of Public Welfare shall have power to cause to be entered of record in its department an order discharging such prisoner or ward for or on account of his or her conviction or commitment, which said order when approved by the Governor *shall operate as a complete discharge of such prisoner or ward, in the nature of a release* or commutation of his or her sentence, to take effect immediately upon delivery of a certified copy thereof to the prisoner or ward, *and the clerk of the court in which the prisoner or ward was convicted or committed shall, upon presentation of such certified copy, enter the judgment of such conviction or commitment satisfied and released pursuant to said order."