## JOHNSTON v. WRIGHT.
### No. 10331.

Circuit Court of Appeals, Ninth Circuit.

Aug. 7, 1943.

Frank J. Hennessy, U.S. Atty., and A. J. Zirpoli, Asst. U.S. Atty., both of San Francisco, Cal., for appellant.

Cecil Wright, in pro. per.

Before GARRECHT, STEPHENS, and HEALY, Circuit Judges.

STEPHENS, Circuit Judge.

Appellee, Cecil Wright, is confined in the United States Penitentiary at Alcatraz, California, by James A. Johnston, warden of that institution. Believing such imprisonment to be illegal, Wright has presented a petition to Honorable William Denman, a member of this court, in which he states the basis of his claim and prays that the writ of habeas corpus should issue and that he be awarded his freedom.

The writ issued and the warden made due return. Thereafter, Wright filed his traverse. After a hearing the judge filed his written "Opinion and Order Granting Petition." The order granting the petition is in words and figures as follows: "* * * Wright's petition to proceed in forma pauperis is ordered granted. He should be discharged from the custody of the Warden; but, pending appeal from this decision, he may be enlarged upon recognizance with security in the amount of Five Thousand Dollars ($5,000.00) for appearance to answer the judgment of the appellate court, provided that unless appeal be taken within ten (10) days from the filing of this order with the Clerk of the United States District Court for the Northern District of California, he shall be enlarged without such recognizance. In the absence of appeal, he shall be discharged from the Warden's custody. William Denman, United States Circuit Judge for the Ninth Judicial Circuit [Endorsed]: Filed Nov. 10, 1942." No formal findings of fact and conclusions of law were filed, but the opinion contains findings and conclusions of issues deemed necessary to the decision.

The warden appeals.

Petitions of appellee Wright for habeas corpus essentially like the instant one have heretofore been considered and denied by each of the three United States district judges then sitting in the district. In the first presentation, the district court judge, after ruling against the petitioner, denied him the right to appeal in forma pauperis. The second presentation before another district court judge met the same fate. Again the petitioner requested the privilege of appealing in forma pauperis, but this request was denied, not by the hearing judge but by Judge St. Sure, to whom a third petition was subsequently presented, and after a thorough hearing it was discharged. Judge St. Sure made full findings of fact and conclusions of law, which were signed and entered September 11, 1942. No petition to appeal as a pauper was presented in this proceeding, and no appeal was taken. Less than a month thereafter, or on October 7, 1942, Wright presented his fourth petition, the instant one, with the result hereinbefore mentioned.

Heretofore, Wright, under a state court sentence to the Illinois penitentiary at Joliet, Illinois, was released on parole. While so at large, he was again tried and convicted of a crime in an Illinois state court and was sentenced to the penitentiary for from one year to life. While serving under the latter sentence in the Southern Illinois Penitentiary, his trial in the United States District Court at Danville, Illinois, was called. Wright was produced from the Illinois penitentiary for trial in the United States District Court in two separate cases under command of a writ of habeas corpus ad prosequendum. In one case, Wright was convicted on all three counts of the indictment, and under date of September 17, 1930, the judge sentenced him to serve five years on the first count, two years on the second count and three years on the third count, all consecutively, in the United States Penitentiary at Leavenworth, Kansas. A fine was also imposed. According to the face of the records the court provided in its sentence that "* * * the sentences herein imposed shall begin upon the expiration of the sentences which the said defendants are now serving in the Southern Illinois Penitentiary." In large measure the issues of this appeal center in this quoted portion of the sentence.

Thereafter, on the same day in the same court, Wright pleaded guilty to another offense, and he was sentenced to the same federal penitentiary "* * * for the period of five years, said sentence to run and be served consecutively with the sentence imposed against the said defendant in case No. 11032 [case noted above], and that said defendant be committed to

said Penitentiary pursuant to said sentence."

Thereupon, Wright was returned to the state penitentiary where he remained as a prisoner until released therefrom on the 31st day of October, 1939, under the following facts.

It appears that Wright, while confined in the state prison, sent a letter to the attorney general of the United States under date of September 3, 1939, complaining that the United States was interfering with his possible parole from the Illinois Penitentiary through a "hold" or "detainer" filed against him at the penitentiary. The Acting Director of the Bureau of Prisons, a department of the United States Department of Justice, under the authority of the attorney general, replied by letter to the warden of the Illinois penitentiary, in which he wrote in part as follows: "He [Wright] states that a Federal detainer has been filed against him at the Illinois State Penitentiary for the purpose of taking him into custody upon his release from state imprisonment and he advises he could secure release on parole provided this detainer were removed. * * * If such release were ordered by the Board, the detainer would induce you to promptly notify the United States Marshal, who would call at your institution and take Wright into custody for service of his Federal sentence." In reply under date of October 12, 1939, the warden wrote that "the fact that he does have a detainer on him will be an important factor in his being given a parole much sooner * * *. Your department will be advised thirty days prior to his release from this institution so that you may have an officer on hand to take him into custody."

It appears from a letter of the Department of Public Safety, Division of Correction, Springfield, Illinois, that the records show as of October 9, 1939, "Paroled on Mittimi Nos. 4984 and 239. Effective when the Federal authorities come for him. If not taken case to be referred back to the Board."

Upon the date of Wright's release from the state penitentiary, which occurred during the calendar month within which these events took place, Wright was taken to the gates of the penitentiary where the United States Marshal took him into custody and conducted him to the federal penitentiary at Leavenworth, from which institution he was regularly removed to the penitentiary at Alcatraz.

It appears from two letters dated August, 1942, that the parole authorities of Illinois consider that Wright will return to Illinois as a parolee, if and when he is released from federal restraint.

From this statement of fact Judge Denman holds that Wright was surrendered by Illinois to serve the federal sentences before the expiration of the Illinois sentence referred to in the federal sentence but questions the legal authority of those who released him to do so. He then concludes that the United States Marshal had no proper authority to take possession of Wright upon his being released from the state prison, and that his imprisonment in United States penitentiaries has been and now is without sanction of law, and that the federal sentences, by their terms, had not and have not become effective.

Wright's main contention on this phase of the case is that his sentences began to run [concurrently with his state sentences] when he was sentenced in the federal court and that with proper good time allowance they have been served in full. Of course, it needs no argument upon the point that the federal sentences, with the part thereof which postpones their beginning to run included, cannot mean that they began to run when they were pronounced. Wright does not claim this. He claims that this part was added without authority by some one other than the sentencing judge. However, it is implicit in Judge Denman's opinion and order that he finds against this contention, and there is substantial support for this finding. Clearly Wright is wrong.

▋ The warden (appellant) takes still another view of the situation. He argues that the true intent and meaning of the federal sentences is that they began to run when Wright was released from the state prison. He argues further that if this be not so, then the sentences are so indefinite as to require Wright's resentence. We think the warden's position cannot be sustained because the starting of the sentence is premised upon the expiration of the state sentences and not upon Wright's release from the state prison. The text of the sentences does not permit of the interpretation suggested by the warden. We do not deem the sentences void for indefiniteness. For authority bearing on this point but not covering the

exact question here, see Wall v. Hudspeth, 10 Cir., 108 F.2d 865; McNealy v. Johnston, 9 Cir., 100 F.2d 280, 282; Brown v. Johnston, 9 Cir., 91 F.2d 370, 372; Austin v. United States, 9 Cir., 19 F.2d 127, 129. It is true that a court may surrender the custody of a person to the custody of a court in another jurisdiction under the principle of comity (Wall v. Hudspeth, 10 Cir., 108 F.2d 865; Ponzi v. Fessenden, 258 U.S. 254, 260, 42 S.Ct. 309, 66 L.Ed. 607, 22 A.L.R. 879) as the warden-appellant here contends. But that is not the point in the instant proceeding. Here, the point is that there is no sanction for the federal jurisdiction to have Wright's custody at all because the event that awakens the federal sentences from a dormant state has never happened.

It is said in Wall v. Hudspeth, supra [108 F.2d 866], "When the court of one sovereign takes a person into its custody on a criminal charge he remains in the jurisdiction of that sovereign until it has been exhausted, to the exclusion of the courts of the other sovereign. * * * But either the federal or a state government may voluntarily surrender its prisoner to the other without the consent of the prisoner, * * *." But this principle gives no support to the point made by the warden-appellant, that Wright has no standing in the instant situation. Wright claims that there is no legal cause for his detention by the federal authorities, while they in turn assert the existence of a legal cause. This is the very basic purpose of the great writ of habeas corpus.

For authorities upon the point of "staggering" the service of sentences and of serving sentences by "piecemeal," see In re Jennings, C.C., 118 F. 479; White v. Pearlman, 10 Cir., 42 F.2d 788, 789.

We are of the opinion that Judge Denman's conclusion that the federal sen-

tences have never begun to run is correct, and that the custody of the warden is based upon a commitment that cannot be supported.

The evidence clearly shows that Wright's discharge from the Illinois prison was not based upon any showing whatever that the state sentences have expired. He was released from state prison nominally on parole, but actually his custody was merely transferred to the federal authorities for further imprisonment in a federal institution. Wright's state sentence was one year to life. There is no evidence whatever that this indeterminate sentence had been fixed to the period he had served in the state prison. On the other hand, the evidence is conclusive to the contrary. The order of "parole" provides "Effective when the Federal authorities come for him. If not taken case to be referred back to the Board." The Illinois authorities, as evidenced by the two letters written by Illinois parole authorities in August, 1942, indicate the Illinois records show Wright is to be a parolee if and when released.

The Illinois parole law gives no authority to the Department of Public Safety, Division of Correction, which governmental agency issued the parole, to terminate a court sentence. Incidentally, it does not appear to give authority to any parole officer or board to parole a prisoner to officers of another jurisdiction for the purpose of subjecting the prisoner to a sentence obtained in the other jurisdiction.[1] We do not pass upon the broader question of the right of the federal authorities to exercise the right of custody of a person while such person is under a limited state restraint by virtue of a conviction under state law. For authority bearing upon this question, see our opinion in Stamphill v. Johnston decided May

[1] Laws 1929, p. 356, ch. 38, § 801, Illinois Criminal Code, Cahill Revised Stat. 1929. "Rules for Parole. The said Department of Public Welfare shall have power, and it shall be its duty, to establish rules and regulations under which prisoners in the penitentiary * * *, may be allowed to go upon parole outside of the penitentiary * * *: Provided, that no prisoner or ward shall be released from either the penitentiary or * * * until the Department of Public Welfare shall have made arrangements or shall have satisfactory evidence that arrangements have been made for his or her *honorable and* *useful employment while upon parole* * * *: And, provided, further, that all prisoners and wards so temporarily released upon parole, shall, at all times, until the receipt of their final discharge, be considered *in the legal custody of the officers of the Department of Public Welfare,* and shall, during the said time, be considered as remaining under conviction for the crime or offense of which they were convicted and sentenced or committed and *subject to be taken at any time within the enclosure of such penitentitiary,* reformatory and institution herein mentioned. * * *" [emphasis supplied].

24th, 1943, and our opinion denying rehearing, June 29, 1943, 136 F.2d 291.

A serious mistake has occurred and the constitutional rights of appellee Wright have been infringed. We make no expression as to his future rights or obligations which may follow appellee's release under the order which must be affirmed. The appellee alleged other reasons for his release. They were not all ruled upon. In the view we entertain of this proceeding, it will not be useful to give attention to these issues.

We direct that the order of release be affirmed and that said order shall be amended so as to provide for appellee's appearance after decision of the Supreme Court of the United States, providing this proceeding reaches such court, under the same terms and provisions as in the trial judge's order in its reference to appeal to and judgment from this court. In the absence of proper steps toward petitioning the United States Supreme Court to take cognizance of this proceeding or upon the Supreme Court's refusal to take cognizance thereof, the petitioner for the writ shall be forthwith delivered into the custody of the warden of the Illinois prison, from which he was released, or to any other officer of the State of Illinois authorized to receive him. Should the State of Illinois for a reasonable time not to exceed twenty days after notice refuse or neglect to accept custody of appellee, the warden shall release him without more.

Order affirmed as amended.