**KIRK v. SQUIER, Warden.**

**No. 10911.**

Circuit Court of Appeals, Ninth Circuit.

June 1, 1945.

Rehearing Denied July 24, 1945.

Loren Grinstead and Arthur Grunbaum, both of Seattle, Wash., for appellant.

J. Charles Dennis, U. S. Atty., of Seattle, Wash., and Guy A. B. Dovell, Asst. U. S. Atty., of Tacoma, Wash., for appellee.

Before HEALY and BONE, Circuit Judges, and McCOLLOCH, District Judge.

BONE, Circuit Judge.

Appellant, Kirk, now an inmate of the United States Penitentiary at McNeil Island, filed his petition for a writ of habeas corpus in the District Court for the Western District of Washington. An order to show cause was directed to the Warden who demurred to the petition. The court below sustained the demurrer, denied and dismissed the petition and remanded petitioner to the custody of appellee. This appeal followed. Cf. Hayden v. Warden, 9 Cir., 124 F.2d 514. Appellee Squier accepts the statement of facts in appellant's brief as a "substantially correct statement of the pleadings and facts herein" and in the light of this situation we proceed to consider the legal question presented.

The petition shows that appellant was indicted in the Superior Court for Los Angeles County, California, on May 15, 1934, for the state crime of kidnapping. On his plea of guilty he was sentenced to life imprisonment and immediately committed to a California state prison to serve this sentence. The California Penal Code authorized such a life sentence to carry the provision "with possibility of parole," in cases where a kidnapping victim had not suffered bodily harm and this language was inserted in the sentence of life imprisonment.[1]

On the day of this state sentence and commitment, Kirk was indicted in the Federal District Court for the Southern District of California for a violation of the postal laws, this offense being committed in connection with the above kidnapping. He was brought before the court, tried and convicted on three counts under this charge, and on May 31, 1934, the federal judge sentenced him to a total of 37 years imprisonment. The various federal sentences were made to run consecutively. At the time Kirk was brought before the federal court and there so tried, convicted and sentenced, he was confined in the state prison serving his life sentence. After this trial and imposition of the federal sentences, he was returned to the California state prison.

The federal sentence contained a clause describing its application as follows, "and to commence to run upon the *release* of the said defendants [Kirk and two others] *from the imprisonment they are now serving* under the judgment and sentence of the State of California" [emphasis supplied]. The federal court was well aware that Kirk was serving a life sentence in state prison at the time the federal sentence was imposed, and clearly understood that the federal sentence (in the absence of commutation of sentence or a pardon of Kirk through state executive clemency) would be utterly futile, if it was to commence when Kirk's state *sentence* ended, since this sentence would end only upon his death. Therefore, the Federal court clearly intended to make the federal sentence "commence to run" if and when Kirk was released from physical confinement in state prison by parole, commutation or pardon.

The federal sentence could have no other meaning. The "life term" of imprisonment under the state sentence provided a chart for the federal court in framing the only possible and effective federal prison sentence that could ever be executed since the state life sentence then being served

---

[1] "§ 209. Punishment of kidnapping. Every person who seizes, * * * kidnaps or carries away any individual * * * with intent to hold or detain, or who holds or detains, such individual for ransom, reward or to commit extortion * * * is guilty of a felony and upon conviction thereof shall suffer death or shall be punished by imprisonment in the State prison for life without possibility of parole, at the discretion of the jury trying the same, in cases in which the person * * * subjected to such kidnapping suffers * * * bodily harm, or shall be punished by imprisonment in the State prison for life *with possibility of parole* in cases where such person or persons do not suffer bodily harm." [emphasis added]

"§ 3046. Parole of life prisoners. No prisoner imprisoned under a life sentence may be paroled until he has served at least seven calendar years."

"§ 3052. Rules and regulations re paroled prisoners. The board shall have power to establish and enforce rules and regulations under which prisoners in State prisons may be allowed to go upon parole outside the prison buildings and inclosures when eligible for parole."

"§ 3053. Credits may be forfeited for violation of conditions. The board upon granting any parole to any prisoner may also impose on the parole such conditions as it may deem proper, * * *."

by Kirk was qualified by the provision "with possibility of parole". This posture of the case clearly made possible the future application and execution of the federal sentence at a time and upon the happening of an event which was easily ascertainable. When such an event happened, the federal sentence would "commence to run" upon the apprehension and incarceration of Kirk by federal authorities.[2]

Kirk remained in the state prison serving his kidnapping sentence until November 16, 1942, on which date he was paroled into the custody of federal authorities—this by direction and consent of the Board of Prison Terms and Paroles of the State of California.

The material language in the parole order is as follows:

"California State Prison at
"Folsom

"Represa, California

"November 16th, 17th, 18th, 19th
and 20th, 1942

"Excerpt from Minutes of Board Meeting Held on the Above Date:

"At a meeting of the State Board of Prison Terms and Paroles held at the California State Prison at Folsom on the above days and dates the following proceedings were had as will appear of record in the Official Book of Records on file in the office of the Clerk at Folsom, to-wit:

"Action on September 1942 Regular Parole Calendar

"Immediate Paroles—Into Custody

"The following named and numbered prisoners having respectively appeared before the Board on an application for parole, on motion duly made and carried the applications were granted, the respective paroles to become effective when they the taken into custody by the Governmental Agency set forth after their respective names, and unless the Board shall hereafter otherwise determine. Provided, however, that it shall be and it is a condition of said paroles, that in the event said Governmental Agency fails to convict or incarcerate the prisoner taken into custody, for the duration of the period of his parole,

then the said prisoner shall immediately report to the State Parole Officer of the State of California and be governed by the instructions of that Official, it being understood that should the Parole Officer deem it proper to return said parolee to prison to await the further order of the Board that he shall be and hereby is authorized so to do.

"Be it further provided that all such parolees shall be required to fully comply with all of the laws, rules and regulations governing parole should they be released from custody prior to the expiration of their parole period.

"19552 Kirk, Jimmie Fred—To Custody of U.S. Authorities.

"Adopted by the Board of Prison Terms and Paroles of the State of California, This 20th day of December, 1942.
"(Signed)     Albert H. Mundt
                    "Assistant Secretary,
                        Board of Prison
                        Term and Paroles
"Attest:
"(Seal)          (L S)
        "/s/    LYLE EGAN
          "Lyle Egan,
                "Secretary, Adult Authority"

The language in the order makes it plain that Kirk was being voluntarily surrendered to the federal government to be incarcerated by it. If he was not so incarcerated, he was to report to the state parole officer. That this was the purpose of the transaction is not to be doubted.

After some delay, Kirk was taken to the federal prison on McNeil Island where he has been confined since December 11, 1942 serving the federal sentences imposed as above indicated.

His contentions on this appeal may be summarized as follows: His California "sentence" is still in force; for the rest of his life he will be a "prisoner" of the state; his legal status as a parolee is that of being "imprisoned" by the state for the reason that parole is but a continuation of imprisonment outside prison walls; he continues to "serve time" on his sentence and remain in the custody of the state until

[2] The Federal District Court takes judicial notice of the statutes and judicial decisions of the State of Calif. Pennington v. Gibson, 16 How. 65, 57 U.S. 65, 14 L. Ed. 847; Factor v. Laubenheimer, 289 U. S. 713, 53 S.Ct. 790, 77 L.Ed. 1467; Flanigan v. Security First Nat. Bank, D.C., 41 F.Supp. 77; Judith Basin Land Co. v. Fergus County, 9 Cir., 50 F.2d 792, 794; Hutchins v. Pacific Mut. Co., 9 Cir., 97 F. 2d 58, 59; Cray v. Hegarty, D.C., 27 F. Supp. 93, 95.

it expires, even though he be out on parole, and only commutation of sentence or an unconditional pardon can end this present parole status of imprisonment. Based on these contentions he argues that since his "custody" is lawfully in the State of California, his present confinement in a federal prison is without authority or warrant in law, and if the federal sentence be construed to become effective on "release from confinement" it is void for uncertainty or for violation of the fundamental law.

■ The Supreme Court (United States v. Daugherty, 269 U.S. 360, 363, 46 S.Ct. 156, 70 L.Ed. 309) lays down the rule that sentences in criminal cases should reveal with a fair certainty the *intent* of the court and exclude any serious misapprehension by those who must execute them, but the elimination of every possible doubt cannot be demanded. See McNealy v. Johnston, 9 Cir., 100 F.2d 280, 282.

■ We do not construe the federal sentence as one providing that Kirk's federal imprisonment should commence at some future indefinite time that could never be ascertained by any reasonable standard or recognized process of law. Fair and reasonable certainty is implicit in this sentence, and beyond all doubt the "intent" of the court is clearly made plain therein. The federal court clearly identified the state sentence referred to when it entered the federal sentence. This is apparent from the complete record in this case which is void of even a suggestion of any other sentence. Both appellant and appellee herein appear in agreement that this prior state sentence was the one and the only one referred to in the federal sentence. In this important aspect, the reference to it is free from ambiguity or uncertainty. Doubt is clearly eliminated.

■ When Kirk was released on parole for the express purpose of delivering him to federal officials to suffer incarceration at the hands of the federal government, the federal sentence ceased to be in abeyance; the event that awakened it from a dormant state had happened. The happening of this foreseeable event made possible its immediate application and execution. The state parole, conditioned as it was, made immediately possible what obviously could be made certain, viz., the application of the federal sentence exactly as was accomplished in this case, and it may be added, exactly as the federal court intended.

Appellant Kirk cites and relies on the two Wright cases, infra. Judge Denman's opinion in In re Wright, D.C., 51 F.Supp. 639, and this court's affirmance in Johnston v. Wright, 9 Cir., 137 F.2d 914, 917, are not directly apposite to a decision of the case at bar. The specific basis for the opinion in Johnston v. Wright is found in the following language of the court:

"Here, the point is that there is no sanction for the federal jurisdiction to have Wright's custody at all because the event that awakes the federal sentences *from a dormant state* has never happened. [Emphasis supplied.]

\*  \*  \*  \*  \*

"We are of the opinion that Judge Denman's conclusion that the federal sentences have never begun to run is correct, and that the custody of the warden is based upon a commitment that cannot be supported."

This court based its opinion upon the fact that from the clear language of the federal trial court's sentence, the starting of that sentence was premised upon the expiration of the state *sentences* and not upon the petitioner's *release from the state prison.* The two Wright cases are further distinguishable from the case at bar in that in the former cases the courts were construing the status of a parolee under the specific provisions of the Illinois penal statutes, which do not confer on state parole officials the discretionary powers granted to California parole authorities under California law. In this vital respect the legal positions of Wright and Kirk are wholly different.

In Johnston v. Wright, supra, this court indicates that the Illinois Parole Law gives no authority to the Department of Public Safety, Division of Correction, which governmental agency issued the parole, to terminate a court sentence, and the law does not appear to give authority to any parole officer or board to parole a prisoner to officers of another jurisdiction for the purpose of subjecting the prisoner to a sentence obtained in the other jurisdiction. In a footnote to this reference to the Illinois parole laws, this court cites the Illinois statute covering rules for parole and sets out in italics what appears to be the limitation imposed upon the Illinois parole authority in respect to the terms and conditions of a parole. Under this Illinois statute no prisoner can be released *"until the*

*Department of Public Welfare shall have made arrangements or shall have satisfactory evidence that arrangements have been made for his or her honorable and useful employment while upon parole * * * that all prisoners * * * so temporarily released upon parole, shall at all times, until the receipt of their final discharge, be considered in the legal custody of the officers of the Department of Public Welfare * * * and subject to be taken at any time within the inclosure of such penitentiary."* [emphasis added] It will be seen that the broad powers granted the Board of Prison Terms and Paroles of the State of California in the parole statutes of that state, are conspicuous by their absence from the quoted Illinois statutes for the California statute provides that "the board upon granting *any* parole to *any* prisoner may also impose on the parolee such conditions *as it may deem proper* * * *."* [Emphasis supplied]

Kirk cites Anderson v. Corall, 263 U.S. 193, 196, 44 S.Ct. 43, 68 L.Ed. 247, as supporting his contention that under his state parole he is still "imprisoned" by the State of California; his custody is lawfully in the State of California, and since he cannot be the prisoner of two sovereignties at one and the same time, his present federal detention must be summarily ended so that the sovereignty first sentencing him may *resume* this lawful "custody" of his person. As indicated, this contention entirely ignores the specific provisions of his state parole which delivered him into the hands of federal officials. Cf. Stamphill v. Johnston, 9 Cir., 136 F.2d 291, 292. The prisoner in the Corall case had been convicted on a federal charge and confined in a federal prison from which he was paroled. He violated his federal parole and while being sought by government agents for this offense, he was convicted by the State of Illinois and confined in its state prison. The federal authorities did not try to take him from state officials but allowed the state to incarcerate him. After his release from the state prison, he was taken into custody by federal officers and the *federal parole board* took action appropriate to revoke and terminate the *federal parole.* The State of Illinois was not in any way concerned in this action. It had compelled the prisoner to serve a state sentence *while he was out of a federal prison on parole,* and this, without protest from government officials. The validity of the action of the federal parole board in revoking the federal parole is the only question decided in the Corall case. It deals with the administration of federal penal provisions and does not provide a substantial basis for any contention that a sovereign state may not lawfully apply such parole rules, regulations and controls to its own released convicts as it may elect to employ in dealing with them.

Kirk is relying on his claimed legal status as a state parolee to effect his release from his present federal imprisonment. Since that status is exclusively the creature of state law, the terms of his parole necessarily determined his status for the purpose of this inquiry. Under this parole he was released from the "custody" of the state so that he might be imprisoned by the federal government. The resulting legal status of Kirk as a parolee was thus lawfully determined by the agency of the state having full power to establish it. Assuming arguendo, that the United States might not assume control of the body of Kirk *until the end of his (life) term,* without the consent of the State of California (Ponzi v. Fessenden, 258 U.S. 254, 42 S.Ct. 309, 66 L.Ed. 607, 22 A.L.R. 879; cf. Stamphill v. Johnston, supra), we find here the full consent of the state to his control and incarceration by the federal government. We do not doubt the authority of the state parole board to give such consent, under the broad powers granted to the board by the statutes of California.

In this act of paroling Kirk under the conditions noted, the State of California was administering its own parole laws. Neither Kirk nor the federal government had the legal right to interfere therewith or to shape or dictate the terms and conditions which this sovereign state might and did elect to attach to this parole. Contrast this clearly defined position of the State of California with the contention of Kirk that his custody is (now) lawfully in that state, and the weakness of his position is apparent. From the moment he was released by the state on the parole here described, his lawful custody passed from the state to the federal government. The only condition of the transfer of custody was that if the federal government did not incarcerate him, he was to report to the state parole officer. See parole laws footnote 1 and language of parole, supra. Cf. Ex parte Silverstein, 52 Cal.App.2d 725, 126 P.2d 962.

**8**

Nor may Kirk by habeas corpus proceedings invoke the doctrine of comity to resist this exercise of state authority since he has violated the laws of both sovereignties. He may not, of right, demand priority for the judgment of either. See In re Wright, D.C., 51 F.Supp. 639, 642; Stamphill v. Johnston, supra; Johnston v. Wright, supra; Wall v. Hudspeth, 10 Cir., 108 F.2d 865, 866; Ponzi v. Fessenden, supra.

The fictional status of ambulatory "imprisonment" while out of prison on parole, referred to in many cases cited by Kirk, including such California cases as In re Heckman, 90 Cal.App. 700, 266 P. 585 and Matter of Stanton, 169 Cal. 607, 147 P. 264, which form of restraint and custody is asserted and applied by states in dealing with their own state parolees, affords no legal basis for overriding the terms of the parole granted by the California parole board. To hold otherwise would violate the rules of comity and challenge the lawful exercise of authority conferred by a state on its own officials to enable them to perform, as in this case, a purely and wholly state function of imposing upon a parole "such conditions as it [Board] may deem proper."

Giving the greatest possible weight to this legal fiction of ambulatory "imprisonment" while out of prison on parole, it does not follow that the State of California, acting through its state parole board which is exercising its statutory authority in imposing the conditions on a parole, may not impose on a parole the condition that the paroled prisoner be surrendered to the federal government to serve a subsequent federal sentence which can be served within the life term of the paroled prisoner. The California State parole laws do not prohibit such action on the part of the Board, and the grant of power to impose conditions on state paroles is broad enough to sustain the action of the state board in this case.

We therefore hold that the phrase in the federal sentence "imprisonment they are *now* serving" [emphasis supplied] means the then present imprisonment by incarceration and not the future ambulatory imprisonment during the state parole period.

Appellant Kirk is lawfully in custody under his federal sentence and the order of the District Court dismissing his petition for a writ of habeas corpus is affirmed.