**UNITED STATES ex rel. LOMBARDO v. McDONNELL.**

**SAME ex rel. DURKIN v. SAME.**

**Nos. 8899, 8954.**

Circuit Court of Appeals, Seventh Circuit.

Feb. 14, 1946.

Rehearing Denied March 13, 1946.

See, also, 63 F.Supp. 570.

No. 8899:

J. Albert Woll, Wm. J. Connor, and John M. Kiely, U. S. Atty., of Chicago, Ill., for appellant.

Robert M. Gibboney, of Rockford, Ill., for appellee.

No. 8954:

Henry L. Balaban, of Chicago, Ill., for appellant.

J. Albert Woll, Wm. J. Connor, U. S. Atty., and Kenneth S. Nathan, Asst. U. S. Atty., all of Chicago, Ill., for appellee.

Before EVANS and KERNER, Circuit Judges, and LINDLEY, District Judge.

KERNER, Circuit Judge.

In No. 8899 appellant William H. McDonnell, United States Marshal, Northern District of Illinois, appeals from a judgment of the District Court discharging appellee from the custody of appellant.

On July 24, 1936, in the Circuit Court of Macoupin County, Illinois, in case No. 718, entitled The People of the State of Illinois v. Joe Lombardo, alias Robert Livingston, appellee was convicted of robbery while armed with a machine gun and sentenced to serve a term of from one year to life. Pursuant to this judgment he was, on August 7, 1936, committed to the Illinois State Penitentiary. While serving the sentence appellee was indicted for bank robbery in the District Court of the United States for the Northern District of Illinois, Western Division, to which court he was brought for trial in case No. 828 on a writ of habeas corpus

920

ad prosequendum, and entered a plea of guilty. Upon the plea and finding of guilty he was, on April 1, 1940, sentenced to be confined in a penitentiary for a period of fifteen years, the sentence to commence "on the date of the expiration of the sentence under which said defendant is now confined in the Illinois State Penitentiary at Joliet, Illinois, pursuant to the judgment and sentence of the Circuit Court of Macoupin County, Illinois, in case No. 718." March 12, 1945, appellee was paroled from the Illinois State Penitentiary and upon his release he was taken into custody by appellant, upon a mittimus issued by the District Court in case No. 828, to serve a sentence of fifteen years. After a hearing on the petition, the court held that the sentence of fifteen years in case No. 828 was void. United States ex rel. Chasteen v. Denemark, 7 Cir., 138 F.2d 289, 291.

In the Chasteen case this court was considering the certainty of a judgment which read "to be served consecutively with case No. 1745995." The question was whether the quoted phrase was sufficient to constitute a cumulative sentence. In passing upon the contention made, this court applied the standards enunciated by the courts of Illinois, to the effect that a judgment entered in a case of cumulative punishment must be of such certainty that the commencement of the second and termination of the first sentence may be seen from the record. People v. Decker, 347 Ill. 258, 179 N.E. 827, and People v. Graydon, 329 Ill. 398, 160 N.E. 748. The record or judgment in the Chasteen case contained only a number—mentioning no title or name of any court in which case No. 1745995 was tried nor the duration of any sentence imposed. Hence, this court was of the opinion that the judgment was vague and indefinite. Such are not the facts in the instant case.

■ Here the District Court sentence in case No. 828 clearly states that Lombardo was confined in the Illinois State Penitentiary under a judgment in case No. 718 of the Circuit Court of Macoupin County, Illinois; that his imprisonment had not been terminated at the time the District Court's sentence was imposed; and that the sentence was to commence on the day of the expiration of the sentence under which Lombardo was confined. In the light of this record, we perceive no vagueness, uncertainty, or obscurity in connection with the language used; hence we conclude that the sentence was valid.

We note that in his petition Lombardo also questioned appellant's authority to take him into custody before the expiration of his state parole. In this court he contends that even if the judgment of the District Court is held erroneous on the ground of uncertainty, appellee, nevertheless, should be discharged because the action of the marshal, in taking custody of Lombardo before the expiration of his State parole, was premature. The District Court did not rule on that issue, but in this court appellee stresses that point. In effect it is argued that the parole is but an extension of the boundaries of the Illinois State Penitentiary and that, theoretically or constructively, at the time the mittimus in case No. 828 was served upon Lombardo, he was and still is in the custody of the Illinois state authorities. In support thereof, appellee relies principally on the case of Johnston v. Wright, 9 Cir., 137 F.2d 914. While we have great respect for that court, yet we are unable to agree with all that was said in that case for the reasons presently to be stated, nor do we think it controlling here.

■ Unquestionably the State of Illinois, having first acquired jurisdiction over appellee, was entitled to retain him in custody until he had finished his sentence, Stamphill v. Johnston, 9 Cir., 136 F.2d 291. That rule rests upon principles of comity, and it exists between federal and state courts. Ponzi v. Fessenden, 258 U.S. 254, 42 S.Ct. 309, 66 L.Ed. 607, 22 A.L.R. 879. While it may be true that when Lombardo was released on parole from the Illinois State Penitentiary he was theoretically a prisoner of the State, yet where a prisoner is on parole from one of two sovereigns, it is for the sovereign granting the parole, and not the prisoner, to determine priority of jurisdiction over him in connection with such parole, United States ex rel. Demarois v. Farrell, 8 Cir., 87 F.2d 957, and the fact that he is subject to the terms of a State parole does not exempt him from being taken by the federal government where no objection is made by the paroling State, United States v. Marrin, D.C., 227 F. 314; that is to say, "He may not, of right, demand priority for the judgment

of either." Kirk v. Squier, 9 Cir., 150 F. 2d 3, 8.

In No. 8954 appellant Durkin appeals from an order dismissing his petition for writ of habeas corpus.

On October 11, 1925, Edwin C. Shanahan, a special agent of the United States Department of Justice, was killed while in the performance of his duties. January 20, 1926, Durkin was arrested and on July 27, 1926, in case No. 38212, in the Criminal Court of Cook County, Illinois, he was convicted of the murder of Shanahan and sentenced to serve a term of thirty-five years in the Illinois State Penitentiary. October 25, 1926, while confined in the Cook County jail pending appeal in the murder case, he was, by writ of habeas corpus ad prosequendum, brought to trial for transporting a stolen car across state lines, National Motor Vehicle Theft Act, 18 U.S.C.A. § 408, and convicted pursuant to indictment No. 14329 filed in the District Court of the United States for the Northern District of Illinois, Eastern Division. November 1, 1926, in the same court, he was convicted in case No. 14335, which indictment also charged another violation of the Motor Theft Act. In case No. 14329 he was sentenced to five years in the United States Penitentiary "to take effect upon his release from custody by the authorities of Illinois." In case No. 14335 he was sentenced to five years in the federal penitentiary "to be served consecutively of five (5) years in case 14329." November 8, 1926, in the same court, appellant pleaded guilty to five other indictments numbered 14330, 14331, 14334, 14557, and 14558 charging five other specific violations of the Motor Theft Act and in each of these cases was sentenced to serve one year and one day in the United States Penitentiary, the "sentences to run consecutively, not concurrently, making the term of imprisonment five (5) years and five (5) days under these sentences; and it is the further judgment of the court and hereby ordered that said sentences * * * shall commence immediately upon completion of the sentence this day imposed * * * in Indictment No. 14335, and it is to run consecutively with said sentence in said cause No. 14335." During the period in which these judgments were entered by the District Court, Durkin's appeal from the judgment entered in case No. 38212 was pending in the Supreme Court of Illinois, but on April 21, 1928, that court affirmed the judgment. People v. Durkin, 330 Ill. 394, 161 N.E. 739.

After the imposition of the sentences, appellant was confined in the Illinois State Penitentiary. November 9, 1926, the mittimi on all seven cases were issued by the clerk of the District Court. These mittimi were, on December 15, 1926, lodged with the Warden of the Illinois State Penitentiary. August 9, 1945, appellant was discharged from the Illinois State Penitentiary and taken into custody by appellee, the United States Marshal, pursuant to the mittimi issued · by the District Court in cases numbered 14329, 14330, 14331, 14334, 14335, 14557, and 14558.

The only question is whether the sentence imposed in case No. 14329, "to take effect upon his release from custody by the authorities of Illinois," is sufficiently clear and definite so that there will be no misapprehension on the part of those delegated to execute the judgment as to when the sentence is to take effect.

Appellant Durkin makes the point that where successive terms of imprisonment are imposed, the sentence ought to be so definite and certain as to advise the prisoner and the officer charged with the execution of the sentence of the time of its beginning and termination.

The argument is that the sentence does not contain the title or the number of the case, nor refer to the court in the State of Illinois which imposed the sentence in the State case; that it does not specify the name of the defendant nor state when the term of imprisonment imposed by the Criminal Court of Cook County ends; that it does not refer to the place of confinement from which Durkin was to be released by the authorities of the State of Illinois; that the commencement and the ending of the sentence imposed by some Illinois court cannot be seen from the record; and that the word "authorities" employed in the judgment is too loose and too general a term of reference. In support of his argument he, too, cites the case of United States ex rel. Chasteen v. Denemark, supra, as well as Hode v. Sanford, 5 Cir., 101 F.2d 290.

■ Concerning federal sentences, the controlling consideration appears to be: Is the language clear; does the language indicate the intent of the court; and does the sentence on its face raise any doubt on the part of those who must execute it?

This we learn from a study of the case of United States v. Daugherty, 269 U.S. 360, 46 S.Ct. 156, 70 L.Ed. 309. In that case the court at page 363 of 269 U.S., 46 S.Ct. 157, 70 L.Ed. 309 said: "Sentences in criminal cases should reveal with fair certainty the intent of the court and exclude any serious misapprehensions by those who must execute them. The elimination of every possible doubt cannot be demanded."

We have already observed that when the trial judge sentenced Durkin in case No. 14329 Durkin's appeal in the murder case was pending in the Supreme Court of Illinois. In such a situation, we think it reasonable to assume that the court before sentencing Durkin considered the possibility of the reversal in the murder case, and to remove any uncertainty as to when the sentence in case No. 14329 was to take effect, he made the sentence to take effect upon Durkin's release from custody by the authorities of Illinois.

We now proceed to discuss several cases decided after the Daugherty case, supra. In McNealy v. Johnston, 9 Cir., 100 F.2d 280, 282, the petitioner sought to be discharged on the ground that his Alabama sentence—which was to begin upon "the expiration of the sentence he is now serving for the Southern District of Florida"—lacks certainty because it could not be ascertained when it would start. The court held there was no serious uncertainty in the language of the trial judge. In Wall v. Hudspeth, 10 Cir., 108 F.2d 865, 866, the sentence was "to commence at the expiration of a sentence of from fourteen to twenty-eight years in the penitentiary of the State of Louisiana which he was then serving." Wall contended that his federal sentence of three years was void because the exact time the Louisiana sentence would terminate was indefinite and uncertain. The court held that such a provision was not "objectionably uncertain and indefinite."

In Hayden v. Warden, 9 Cir., 124 F.2d 514, the petitioner was sentenced to a five-year term of imprisonment "to begin to run upon defendant's release after serving sentence pronounced in the State of California." Hayden contended that the federal sentence was void because it provided that his imprisonment was to begin at some future indefinite time. The court held that the District Court could properly order the sentence to run consecutively with another sentence. See also Matthews v. Swope, 9 Cir., 111 F.2d 697.

In Johnston v. Wright, supra [137 F.2d 917], Wright had been sentenced from "one year to life" and while serving his sentence in the Illinois State Penitentiary he was, as here, brought before a federal court on a writ of habeas corpus ad prosequendum. He was convicted and sentenced, the sentence to begin upon the expiration of the sentence which he was serving in the Southern Illinois Penitentiary. After being sentenced, Wright was returned to the State penitentiary and remained there until released on parole. Federal detainers having been lodged with the Illinois penitentiary, the United States Marshal took him into custody upon his release. Wright thereafter sought to be discharged on the ground that his federal sentence was void for uncertainty because, so he claimed, it was impossible to determine, from the sentence, when it was to begin. While Wright was ordered discharged for other reasons, the court held that the sentence was not void for indefiniteness.

It is worthy of note that in none of the cases cited does it appear that the federal sentences made reference to the title or number of the State case, or the State court in which the sentence was imposed. Yet, despite the absence of what Durkin here terms necessary essentials, the federal sentences involved in those cases have been held to be valid.

We believe that the sentences involved in these appeals exclude any serious misapprehension of those who must execute them and that they reveal with fair certainty the intent of the courts rendering the judgments; consequently, we must affirm the order in the Durkin case and reverse the judgment in the Lombardo case.

It is so ordered.