## MALONE v. UNITED STATES.
### No. 7208.

Circuit Court of Appeals, Ninth Circuit.
Oct. 30, 1933.

E. F. Dailey, of Seattle, Wash., and A. E. Dailey, of Everett, Wash., for appellant.

Anthony Savage, U. S. Atty., of Seattle, Wash., and De Witt C. Rowland, Asst. U. S. Atty., of Tacoma, Wash.

Before WILBUR and GARRECHT, Circuit Judges, and FEE, District Judge.

FEE District Judge.

The instant appeal is prosecuted from the denial of a motion to suppress certain evidence. The indictment charged transportation and possession of liquor contrary to the terms of the National Prohibition Act (27 USCA), and further that the defendant had previously been convicted of transportation of intoxicating liquor, in a federal court.

The circumstances hereinafter set out are found either in the affidavits upon the motion to suppress, or in the evidence given at the trial. A government investigator knew one Dean was dealing in liquor, and that Charles Malone was his partner, and that the two had a delivery system, and on July 27, 1932, this officer had purchased liquor from Dean at the "White Spot" in Everett, Wash., and had also investigated defendant Malone. Some time about two weeks before the indictment in question, one of the agents, using the name of "Kane" or "Kinney," called Main 243, Everett, and talked to a woman who promised a delivery of two quarts of gin at the "White Spot." After waiting a half hour, this agent, on failure of the liquor to appear, again called the same number, which was answered by Dean, who said he did not know "Kane," and that he had asked Charley Malone, and that the latter did not know "Kane" either. About a week thereafter, this officer and another were told by a reliable informant that Dean was delivering liquor in a Ford coupé, bearing license No. 75041, and that this car might be found at 2708 Oak street, Everett, Wash.

The agents watching this address on the evening of October 29, 1932, saw Dean get into the Ford coupé so numbered and drive to a well-known liquor establishment on Hewitt avenue in Everett. Dean made several deliveries of characteristic parcels about the size of a quart. Each time he would reach in the back part of the coupé, get out and lock the car, and leave a parcel. The car was then driven back to the house on Oak street, and the officers determined to make an arrest upon the next trip.

About 7:45 p. m. appellant came out of the same house and got into the Ford coupé and leaned back as though reaching for something. Thereafter he drove to the 1600 block of Pacific avenue, followed by the agents. Malone parked the car while the investigators were fifty yards distant, and walked towards a garage where two well-dressed men were standing. One agent followed appellant and brought him back to the car. The other approached the Ford coupé on the left side. Thence the agent saw through the glass door, a pint bottle of whisky sticking in the pocket on the right side of the car, in plain view. The agent could see below the neck of the bottle and could see the liquid there, which appeared to be whisky. He then informed the other agent, who was returning with Malone, that he had seen the liquor in the car. When the car was opened it was found to contain a pint of whisky in the right car pocket, a pint of whisky under a pair of overalls, and in a compartment specially fitted for carrying various sized containers, and concealed behind a hinged seat, a large quantity of assorted liquor in various sized and shaped containers.

The affidavits filed by defendant himself and some other persons directly controvert those of the government in some particulars. Jean Snyder swears she, upon October 26, 1932, answered every telephone call coming to Main 243, and no one asked for two quarts of gin, and that Dean did not on that day over the telephone talk to any one about knowing any person, or asking Charley Malone about asking any person, or with relation to the "White Spot." Dean denies that he had such a conversation, and that he made deliveries on Hewitt avenue, and that he knew of any liquor joint on that street. The affidavits of appellant and two other persons affirm that no liquor was in sight in the coupé at the time the officers looked into it, and that none was found until the back of the seat was opened, and declare that appellant

was arrested before the liquor was found by the officers. Other affidavits tend to discredit the agents, because upon the same day they had stopped another car of a different make, containing three people coming from the same address, searched it for liquor, and asked the driver if he were Malone.

The matter came on for hearing first upon motion to suppress supported by affidavits and controverted by sworn statements of the officers. The substance of these documents has already been set out above. The District Judge held the ruling on suppression in abeyance until time of trial. A jury was thereupon waived and the judge, by consent, tried the issues. During the course of the hearing the motion to suppress was denied. Appellant produced as witnesses none of the persons who had made affidavits in support of the motion. The findings were for the government and appellant was convicted.

The only assignment of error argued is the denial of the motion to suppress. The reasons for this complaint are that: (1) Inconsistencies are found in the affidavits of the officers, and these are in some respects contradicted; (2) the officers did not stop the car when they first saw it while in the process of delivery but awaited a second trial; (3) that in view of the elapsed time a search warrant could have been obtained; (4) that the search was illegal because arrest of appellant preceded such action.

■■ The trial judge performed the function of a jury by stipulation. In such a capacity his finding of guilt of appellant is an affirmation of the validity of the search. The only question which can be raised by appellant is whether a prima facie case was made for the admission of the evidence.

■ A re-examination of the record establishes the existence of a proper foundation for reception. The officer is entitled to use and believe any of his senses. When a bottle containing whisky with the liquid in view, is seen in a car in which defendant has just driven while an officer was observing, a crime has been committed in the presence of the officer. There is direct evidence that the act offends the law. If his sense of sight does not deceive him, action by the officer under the circumstances could not be criticized by the most meticulous; if it does lead him

astray, in any event he had reasonable cause to believe a crime had been committed.

■■ True this state of facts is not uncontroverted by the appellant's affidavits. The weight to be given to conflicting statements on motion to suppress is for the trial judge. He alone is charged with the duty of determining whether a prima facie case has been made for the admission of the evidence. Poetter v. United States, 31 F.(2d) 438, 439 (C. C. A. 9); U. S. v. Jankowski, 28 F.(2d) 800 (C. C. A. 2). Unless clearly erroneous the finding must be sustained.

■ Next there was no necessity for the officers to make an arrest earlier than they did. The contention is an effort to reduce enforcement to a game, with technical rules and arbitrary taboos.

■ Nor can the third contention be upheld. The law does not require officers who are watching a fast moving vehicle, like an automobile, apparently being driven in a criminal enterprise, to obtain a warrant before search, if they have reasonable cause to believe it to be used in the violation of the law. While either or both officers are gone on such a mission the car might be driven out of reach.

■ Finally, appellant contends that there can be no lawful search because his arrest preceded this action upon the part of the officers. But "the right to search and the validity of the seizure are not dependent on the right to arrest." Carroll v. U. S., 267 U. S. 132, 158, 45 S. Ct. 280, 287, 69 L. Ed. 543, 39 A. L. R. 790. Even if appellant were prematurely arrested it could not invalidate his conviction, where it is based upon competent evidence. Many defendants have been arrested before the government had the complete web of circumstances in its hands. Before or after arrest the right of search depends upon the same principles. The officer must have reasonable cause to believe that the contents of the particular piece of property offend against the law. In the present case, whether they saw the bottle or not, and whether the arrest took place before or after the finding of the liquor, the officers had reasonable cause to believe the car contained intoxicating liquor.

Judgment affirmed.