**Bert STRAND, Sheriff of San Diego County, State of California, Appellant,**

v.

**William SCHMITTROTH, Appellee.**

No. 14733.

United States Court of Appeals
Ninth Circuit.
May 3, 1956.

James Don Keller, Dist. Atty., Claude B. Brown, Deputy Dist. Atty., County of San Diego, San Diego, Cal., Edmund G. Brown, Atty. Gen., Clarence A. Linn, Chief Asst. Atty. Gen., Arlo E. Smith, Deputy Atty. Gen., State of California, for appellant.

Oscar F. Irwin, San Diego, Cal., for appellee.

Laughlin E. Waters, U. S. Atty., Louis Lee Abbott, James T. Barnes, Asst. U. S. Attys., Los Angeles, Cal., amici curiae.

Before HEALY, BONE and CHAMBERS, Circuit Judges.

BONE, Circuit Judge.

I.

On September 15, 1953, a complaint captioned "The People of the State of California, plaintiff, vs. William Roth, defendant," was lodged in the Municipal Court, San Diego Judicial District, County of San Diego, State of California. It charged the said Roth with the commission of a felony, to wit, uttering and passing a check bearing a fictitious name with intent to cheat and defraud certain California persons named in the complaint. Complainant prayed that a warrant issue for Roth's arrest.

Sometime in January, 1955, Roth (appellee herein) was apprehended and delivered to the custody of the San Diego Police Department on a warrant issued by the San Diego authorities. A preliminary hearing was set for and held on February 10, 1955 in the Municipal Court of San Diego Judicial District. The preliminary examination was held in the Municipal Court which determined that there was reasonable cause to believe that Roth (whose true name appears to be Schmittroth) had committed an offense against the State of California, and ordered him held in custody of appellant sheriff pending further proceedings. Appellee raised the question of State court jurisdiction over him (for reasons noted below) but his objection was overruled by the Municipal Court.

On February 8, 1955, appellee Schmittroth filed a petition for a writ of habeas corpus in the United States District Court, San Diego, this to secure freedom from detention by appellant.

The records before us indicate that in January, 1955, appellee had entered a plea of guilty in a criminal case then pending in the above named United States District Court the charge against him being the offense of transporting a false security in interstate commerce, a federal crime he had committed in Florida. Upon his plea, and on January 17, 1955, Judge Carter, the District Judge then sitting, sentenced Schmittroth to ten years confinement. Execution of this sentence appears to have been suspended and appellee was placed on five years probation by Judge Carter. 18 U.S.C.A. § 3651.

On February 9, 1955, the District Judge of the United States Court or-

dered appellant to show cause on February 17, 1955 why a writ of habeas corpus should not issue on appellee's petition and appellee be discharged from confinement by appellant. On February 11, 1955, appellant filed an answer to Schmittroth's petition.

On February 17, 1955, a hearing was held in the lower court on appellee's petition for the writ and appellant's answer thereto. On that day the lower court issued and filed an "order for discharge" which directed that Schmittroth be "forthwith discharged from further imprisonment and detention by reason of the said commitment issued by the Municipal Court, San Diego Judicial District, County of San Diego, State of California." The lower court did not make findings of fact and conclusions of law to accompany this order. Under this order appellee Schmittroth was discharged from imprisonment and detention by appellant.

On February 21, 1955, appellant filed a petition for a rehearing. The lower court denied this petition by order dated February 24, 1955.

The record of the hearing on February 17, 1955 (the only hearing held) is illuminating in that it serves to indicate the attitude of the court and both parties as to the *finality* which might possibly attach to the court's order of discharge dated and filed on that day. Colloquy between Judge Hall and counsel in open court shows that the parties were advised by the Judge that appellee was entitled to the writ he sought; that it was the opinion of the court that counsel for appellee "had better have findings of fact here in this matter which can follow from this order," i. e., the order of discharge entered that day. On this note the proceedings ended.

Contrary to what appellee suggests in his brief we think that this record sustains the view that the discussion in open court on February 17, 1955 makes abundantly plain that counsel for both parties (neither of whom made any objection to the court's suggestion) did not regard the making and entry of findings of fact and conclusions of law in the case at a later date as a meaningless gesture by the court. Respecting this procedure we quote in the margin the colloquy above referred to.[1]

It was pursuant to this unopposed suggestion that Judge Hall did later make and enter a formal judgment supported by findings.[2] This procedure was in con-

1. The Court: "I think perhaps that you had better have findings of fact here in this matter which you can follow from this order. * * * However, in your findings of fact why you can incorporate, if you wish, this whole record. * * *"
The Court: "It is your lawsuit. If you want to put it in [letter from Chief of United States Probation officer showing that there was no consent granted by that office, and there had not been a request made], why, you may offer it."
Without objection from counsel for appellant the lower court received this letter in evidence to supplement the hearing record.
The Court: "* * * Now, the original file in this habeas corpus proceeding is a little scrambled up."

2. The lower court found, inter alia, that all of the allegations of fact in Schmittroth's petition for a writ of habeas corpus were true; that he was on probation to the United States District Court for the Southern District of Cal-

ifornia for five years, commencing January 17, 1955; that no consent to prosecute or incarcerate him was ever obtained from the United States by the State of California; that the United States District Court for the Southern District of California had not consented to his prosecution by the State of California for offenses allegedly committed by him *prior* to the date he was placed on probation by the United States District Court for the Southern District of California.
Upon these facts the court concluded, inter alia, that appellee had the right to petition for a writ of habeas corpus to question the legality of his confinement by the State of California; that he was incarcerated by the State of California without any jurisdiction over his body in violation of his constitutional rights; that appellee was in the exclusive jurisdiction of the United States, subject to the orders of the United States Probation Department, for the duration of his pro-

formity with his earlier suggestion concerning the *desirability* of entering findings in the case at some subsequent date. Appellant contends that, on the record, "the Court did not intend its 'minute order' of February 17, 1955, to be final in any sense." We agree with this view of the record.

From the whole record we think it clearly indicates that the trial court *intended to retain jurisdiction of the proceedings for further judicial consideration after entering the discharge order of February 17, 1955.* In our view, this sort of proceeding not only served the ends of justice but was well within the orbit of judicial discretion. The end result was the preparation and filing, on March 11, 1955, of formal findings of fact, conclusions of law, and a judgment. The judgment was in harmony with the earlier "order of discharge" dated February 17, 1955.

On April 1, 1955 and upon application of the Attorney General of the State of California (appearing as counsel for appellant) the lower court issued a "Certificate of Probable Cause" in which it briefly recited, inter alia, that probable cause existed for an appeal "from the *orders* and judgment of this Court granting the Writ of Habeas Corpus and ordering petitioner released from custody in the above entitled matter." (Emphasis supplied.)

On March 16, 1955, appellant gave formal "Notice of Appeal" the text of which appears in the margin.[3] The text of this notice shows that appellant was endeavoring to appeal from *both* of the orders and/or judgments here noted, and involved on this appeal.

### Appellee's Position

On this appeal appellee vigorously contends that the February 17, 1955 "order

bation; that he was entitled to an order of the Court discharging him forthwith from the custody of respondent (sheriff).

3. "Notice is hereby given that Bert Strand, Respondent above named, hereby appeals to the United States Circuit Court of Appeals for the Ninth Circuit from the or-

for discharge" was a final and appealable order in the habeas corpus proceeding which fully terminated the controversy; that findings and conclusions "are not required in habeas corpus proceedings" (under Civil Rule 52, 28 U.S.C.A.) since "they add nothing to the [this] order." His claim is that findings in connection with this order were not necessary to give it full force and validity; that since it was *the* final and appealable order in the case this Court has no jurisdiction to entertain the instant appeal since it was not timely "perfected" and is therefore fatally defective *as against the aforesaid February 17, 1955 "final" order,* this for reasons we note below.

On this jurisdictional issue appellee's specific argument is that appellant did not secure the (above noted) certificate of probable cause required by 28 U.S.C.A. § 2253 *within* thirty days from and after entry of the February 17, 1955 order and judgment of discharge hence the attempt to appeal from that order necessarily fails. This certificate was issued by Judge Hall approximately 41 days after entry of the February 17, 1955 "order for discharge," and approximately 35 days *after* the order denying a rehearing on that order. [Under appellee's theory, the appeal from the judgment of March 11, 1955 would have no legal significance and should be disregarded.] In short, appellee's position is that there *is* no appeal properly before us in this case and the purported appeal should be dismissed for lack of jurisdiction.

Where detention arises (as here) out of process issued by a state court, it has been held by several Circuits that application for or obtaining the certificate of probable cause *within 30 days* (the time allowed by Rule 73(a) of the Federal Rules of Civil Procedure for taking an appeal) from and after an appealable

der granting a Writ of Habeas Corpus to the Petitioner herein, dated the 18th day of February, 1955, and from the judgment granting a Writ of Habeas Corpus to the above-named Petitioner, dated March 11, 1955.

"Dated: March 16, 1955."

order is entered, is prerequisite to our appellate jurisdiction.[4]

In the light of these various Circuit holdings on this jurisdictional question we face the necessity of determining which one of the two orders and/or judgments here considered constitutes the final and appealable order entered in this case. Is it the order of discharge dated February 17, 1955 (or, in the alternative, the denial of the above noted petition for rehearing on February 24, 1955) or is it the second order and judgment filed and entered March 11, 1955? If the order of February 17, 1955 was a final and appealable order, (or in the alternative, if the denial of a rehearing can be said to be the "final order" in the case) *then* the appeal here attempted to be taken from either of these two earlier orders and/or judgments was not "perfected" within the allowable thirty day period from and after date of their entry because more than 30 days had elapsed between the entry of both orders and the filing and entry of the certificate of probable cause.

However, the certificate of probable cause for appeal from the later judgment of March 11, 1955 was obtained *within* the necessary thirty days from and after entry of that judgment. If it must be regarded as the final and appealable order in this case, it is clear from the record that the notice of appeal given in this case (which also includes appeal from the February 17th order) was timely filed and has been "perfected."

■ In light of all of the facts and the sequence of events we have noted, we conclude that the judgment of March 11, 1955 was the final and therefore the appealable order. We think that the fact that appellant may have made a futile attempt to (also) appeal from the order of February 17, 1955 (Footnote 3) *is not* a jurisdictional bar to entertaining a timely appeal from the judgment of March 11, 1955 which rests upon formal findings and conclusions. In this view of the case, and because findings of fact were filed to support what we here hold was the final and appealable order, it is not necessary here to decide whether findings and conclusions are required to support a judgment in a habeas corpus proceeding.

For the reasons above stated, we hold that the contention of appellee that this Court has no jurisdiction of the instant appeal is without merit. We also hold that the "order for discharge" entered on February 17, 1955 was not the final order from which to perfect an appeal, and that the aforesaid certificate of probable cause was timely procured. Hence, this Court has jurisdiction to entertain the instant appeal, 28 U.S.C.A. § 2253.

II.

Further issues are tendered by appellant. He urges that under "the rule of comity" the Court first acquiring jurisdiction of the person of a criminal is entitled to retain him in custody until he has finished his sentence; that the facts shown in this case do not affect the jurisdiction of the State of California to retain custody of appellee; that application of the rule of comity in no way affects any personal or constitutional right residing in him. In short, regardless of *how* appellee's presence in the State court was secured, and regardless of the rule of comity, he was afforded full opportunity to defend against the State charge. Appellant supports this argument with a citation of cases.[5]

4. Boyden v. Webb, 9 Cir., 1953, 208 F.2d 201; Ex parte Farrell, 1 Cir., 1951, 189 F.2d 540; United States ex rel. Carey v. Keeper of Montgomery County Prison, 3 Cir., 1953, 202 F.2d 267, certiorari denied Commonwealth of Pennsylvania ex rel. Carey v. Same, 1953, 345 U.S. 930, 73 S.Ct. 793, 97 L.Ed. 1345; United States ex rel. Kreuter v. Baldwin, 7 Cir., 1931, 49 F.2d 262. 28 U.S.C.A. §§ 2107, 2253.

5. Hebert v. State of Louisiana, 272 U.S. 312, 315, 47 S.Ct. 103, 71 L.Ed. 270; Ponzi v. Fessenden, 258 U.S. 254, 42 S. Ct. 309, 66 L.Ed. 607; Stamphill v. Johnston, 9 Cir., 136 F.2d 291; Werntz v. Looney, 10 Cir., 208 F.2d 102; United States ex rel. Pasela v. Fenno, 2 Cir., 167 F.2d 593, 595; Rawls v. United States, 10 Cir., 166 F.2d 532; United States ex rel. Demarois v. Farrell, 8

Appellant also challenges the power of the lower court (under Section 2241 of Title 28 United States Code) to grant the instant writ of habeas corpus. His point is that if the lower court "purported to deny the consent to the State's jurisdiction the court abused its discretion in its failure to *consent* to the State's jurisdiction." He urges that where (as here) the State authorities had actual possession of appellee and were affording him full right to present a defense, including the right of the Federal Government to enter an objection on the basis of the rule of comity concerning first acquired jurisdiction, the State court has jurisdiction. In light of this situation, and under the rule of comity the proceedings of the State authorities affected no right or immunity granted appellee by the Constitution, laws or treaties of the United States. Appellant cites cases in support of this argument.[6]

Appellant also argues that a writ of habeas corpus is not the proper remedy or procedure to review the application or failure to apply the rule of comity in the second (state) court acquiring jurisdiction. He supports this contention with citation of cases.[7]

These questions are considered below and discussed in light of cases which appear to be relevant.

A leading case on identical facts is Grant v. Guernsey, 10 Cir., 1933, 63 F.2d 163, certiorari denied 1935, 289 U.S. 744, 53 S.Ct. 688, 77 L.Ed. 1491. In the Guernsey case the petitioner was convicted of a federal offense, but sentence was suspended and petitioner placed on probation. Later, the state authorities charged petitioner with a state criminal offense committed prior to the federal sentence. Petitioner sought in the Federal District Court a writ of habeas corpus which was issued. On appeal, the Circuit Court of Appeals affirmed, saying the state action was "a direct interference with federal jurisdiction, and a violation of the rule of comity between federal and state courts." At page 164 of 63 F.2d.

Since the Guernsey case many decisions[8] have either applied the rule, or recognized the rule but grounded the decision upon other factors.

Despite the wide adherence to the rule of the Guernsey case, supra, some courts have expressly refused to follow it. In United States ex rel. Pasela v. Fenno, 2 Cir., 1948, 167 F.2d 593, 595,[9] the

Cir., 87 F.2d 957; People ex rel. McCarthy v. Ragen, 389 Ill. 172, 58 N.E.2d 872; Wilkinson v. Youell, 180 Va. 321, 23 S.E.2d 356.

6. Morse v. United States, 267 U.S. 80, 82, 45 S.Ct. 209, 69 L.Ed. 522; Stamphill v. Johnston, 9 Cir., 136 F.2d 291, 293; Werntz v. Looney, 10 Cir., 208 F.2d 102, 104; United States ex rel. Demarois v. Farrell, 8 Cir., 87 F.2d 957.

7. Morse v. United States, 267 U.S. 80, 82, 45 S.Ct. 209, 69 L.Ed. 522; Stamphill v. Johnston, 9 Cir., 136 F.2d 291, 292; United States v. Marrin, D.C., 170 F. 476, 479-480.

8. E. g., Wall v. Hudspeth, 10 Cir., 1940, 108 F.2d 865; Lunsford v. Hudspeth, 10 Cir., 1942, 126 F.2d 653; United States ex rel. Speece v. Toman, D.C. N.D.Ill.1938, 23 F.Supp. 119; United States v. Robinson, D.C.W.D.Ark.1947, 74 F.Supp. 427; Wing v. Stewart, D.C. W.D.Mo.1948, 77 F.Supp. 257; United

States ex rel. Hall v. McGowan, D.C.D. Minn.1948, 80 F.Supp. 792; United States v. Mierzanka, D.C.W.D.Mich.1949, 89 F. Supp. 573. Cf. Lu Woy Hung v. Haff, 9 Cir., 1935, 78 F.2d 836 (deportation of paroled state prisoner); Ex parte Vasquez, D.C.N.D.Cal.1954, 122 F.Supp. 160 (deportation of federal probationer). Cf. Beavers v. Haubert, 1905, 198 U.S. 77, 25 S.Ct. 573, 49 L.Ed. 950; Peckham v. Henkel, 1910, 216 U.S. 483, 30 S.Ct. 255, 54 L.Ed. 579; United States v. Binion, D.C.D.Nev.1952, 13 F.R.D. 238, appeal dismissed, 9 Cir., 1953, 201 F.2d 498, certiorari denied 1953, 345 U.S. 935, 73 S.Ct. 796, 97 L.Ed. 1363 (removal of defendant from one district to another, being charged with crimes in both districts).

9. Certiorari granted 1948, 334 U.S. 857, 68 S.Ct. 1530, 92 L.Ed. 1777, but dismissed by stipulation of counsel, 1948, 335 U.S. 806, 69 S.Ct. 29, 93 L.Ed. 363. The Circuit Court opinion affirmed the

Court stated, "We understand the Guernsey case to hold that the second [state] court, purportedly assuming jurisdiction, is entirely lacking in it * * *. If this is the holding of that decision, we decline to follow it." United States of America ex rel. Spellman v. Murphy, 7 Cir., 1954, 217 F.2d 247, reached the result announced in the Pasela case. Both cases involved *federal probationers* subsequently charged before other courts, one a Naval court-martial, the other before a state court.

Appellee here argues that the California court was lacking in jurisdiction for the reason that he was on probation granted by the lower court the consent of which court to his trial in the State court was not sought or obtained at any time. However, appellant argues that the State court does have jurisdiction to try appellee while he is a federal probationer *unless* the federal court *or* appropriate federal authorities object to exercise of state jurisdiction over the accused.

It is conceivable that certain statements of the Supreme Court may be susceptible of the meaning that the state court lacks jurisdiction in this case.[10] In Ableman v. Booth, 1859, 21 How. 506, 16 L.Ed. 169, and Tarble's case, In re Tarble, 1872, 13 Wall. 397, 20 L.Ed. 597, state courts were attempting to release, by issuance of writs of habeas corpus, prisoners who were then confined by federal authorities. In Ponzi v. Fessenden, 1922, 258 U.S. 254, 42 S.Ct. 309, 66 L.Ed. 607, the accused was in prison following conviction in a federal court when the State sought, by writ of habeas corpus, to bring the prisoner before a state court in order to there prosecute him for crimes against the State. It was in such circumstances that the Supreme Court spoke in general terms of lack of jurisdiction in the State court. Cf. Covell v. Heyman, 1884, 111 U.S. 176, 4 S.Ct. 355, 28 L.Ed. 390, where a specific res was involved.

We believe that the facts of this case are distinguishable. Here Schmittroth was arrested by the California authorities and was personally before the State court. At the time of the State arrest he had freedom of movement within the State, subject only to certain limitations in the order of the federal probation officer and the district court (such as to stay away from cities, etc.), and subject also to the requirement that the probationer report to the chief probation officer once a month.

██ It has long been the rule in criminal prosecutions that if the accused is personally before a court having jurisdiction of the subject matter, that court has jurisdiction over the accused regardless of how the accused was brought into the presence of the court.[11]

---

District Court, D.C.D.Conn.1947, 76 F. Supp. 203.

10. Mr. Chief Justice Taft, in Ponzi v. Fessenden, 1922, 258 U.S. 254, at page 260, 42 S.Ct. 309, at page 310, 66 L.Ed. 607, stated:

"The chief rule which preserves our two systems of courts from actual conflict of jurisdiction is that the court which first takes the subject-matter of the litigation into its control, whether this be person or property must be permitted to exhaust its remedy, to attain which it assumed control, before the other court shall attempt to take it for its purpose."

Compare Ponzi v. Fessenden, supra, with Morse v. United States, 1925, 267 U.S. 80, 82, 45 S.Ct. 209, 69 L.Ed. 522, "The principle that when the jurisdiction of a

court has attached, it must be respected as exclusive until exhausted, is a rule of comity, having a wide application in cvil cases but a limited one in criminal cases."

11. Ker v. People of State of Illinois, 1886, 119 U.S. 436, 7 S.Ct. 225, 30 L.Ed. 421 (kidnapped in Peru and brought before an Illinois court); Mahon v. Justice, 1888, 127 U.S. 700, 8 S.Ct. 1204, 32 L.Ed. 283 (seized by armed men in West Virginia and taken to Kentucky); Pettibone v. Nichols, 1906, 203 U.S. 192, 27 S.Ct. 111, 51 L.Ed. 148 (kidnapped in Colorado and taken to Idaho for trial); Moyer v. Nichols (Haywood v. Nichols), 1906, 203 U.S. 221, 27 S.Ct. 121, 51 L.Ed. 160. Many state citations are listed in Pettibone v. Nichols, 203 U.S. at page 215, 27 S.Ct. 111. Additional federal cases

■ It seems rational to conclude that when a case arises like the one now before us, the state court does have jurisdiction to try the accused (assuming the due process requirements for existence of jurisdiction are met) but that when the federal court (or federal authorities as the case may be) *object* to its exercise of jurisdiction, the state must relinquish its jurisdiction until a future time, i. e., when the federal jurisdiction (here the period of probation) is at an end, *or* the federal court (or authorities) have expressed *consent* that the state may exercise its power. Hebert v. State of Louisiana, 1926, 272 U.S. 312, 47 S.Ct. 103, 71 L.Ed. 270; Florio v. Edwards, 5 Cir., 1936, 80 F.2d 509; United States ex rel. Pasela v. Fenno, supra; United States ex rel. Spellman v. Murphy, supra.

■ It seems to us in the *instant case* the federal court, by issuance of its writ of habeas corpus, has clearly expressed *its objection* to exercise by a state court of its criminal jurisdiction over the federal probationer at this time. Applying this rule, the State must postpone exercise of its criminal jurisdiction, either on the theory of comity between federal and state courts, or on the theory of federal supremacy. Ponzi v. Fessenden, supra; Covell v. Heyman, supra; Tarble's case,

supra. Since here the federal court has clearly expressed disapproval of the California court's action, we need not discuss any theories of assumed consent. Hebert v. State of Louisiana, supra.

No prior case decided by this Court appears to be in conflict with the views here expressed. The principal Ninth Circuit case is Stamphill v. Johnston, 9 Cir., 1943, 136 F.2d 291, certiorari denied 320 U.S. 766, 64 S.Ct. 70, 88 L.Ed. 457, where the facts were the reverse of those in the case before us.[12] In that case the State of Oklahoma first acquired jurisdiction over Stamphill, but later voluntarily surrendered the accused (out of its penitentiary) to the United States for trial in an Oklahoma federal district court. (When the Stamphill habeas corpus proceeding was before this Court, Stamphill was confined in the federal penitentiary at Alcatraz serving the Oklahoma federal sentence.) In our opinion we referred to Ponzi v. Fessenden, supra, and Ableman v. Booth, supra, and stated, "However the defendant was brought before the District Court, once he was there *it had and was bound to exercise complete jurisdiction over him.*" At page 292, 136 F.2d, emphasis supplied.[13]

are In re Johnson, 1897, 167 U.S. 120, 17 S.Ct. 735, 42 L.Ed. 103 (illegal arrest); Malone v. United States, 9 Cir., 1933, 67 F.2d 339 (premature arrest); United States ex rel. Voight v. Toombs, 5 Cir., 1933, 67 F.2d 744 (wrongful seizure beyond territorial jurisdiction of court); Cardigan v. Biddle, 8 Cir., 1925, 10 F.2d 444 (fugitive from justice surrendered on request of another state may be tried in demanding state for crimes other than the one for which he was surrendered).

12. Throughout this opinion we have generally used the terms "federal court" and "state court" rather than to write in terms of "the first court to exercise jurisdiction" and "the second court to take jurisdiction." While this was done for facility of expression, the cases indicate that the same rules apply where a state court first takes jurisdiction and the federal court proceeding commences thereafter. Zerbst v. McPike, 5 Cir., 1938, 97

F.2d 253; Rosenthal v. Hunter, 10 Cir., 1947, 164 F.2d 949. However, state authority is apparently subject to whatever judicial process "may be necessary on the part of the national government to preserve its rightful supremacy in cases of conflict of authority." Tarble's case, supra, 13 Wall. at page 407.

13. In re Fox, D.C.N.D.Cal.1892, 51 F. 427, stated that a federal prisoner on bail could be arrested and prosecuted by California unless federal authorities objected. Express consent to state prosecution was found in Cato v. Smith, 9 Cir., 1939, 104 F.2d 885, certiorari denied 1939, 308 U.S. 608, 60 S.Ct. 177, 84 L.Ed. 508; United States ex rel. Moore v. Traeger, 9 Cir., 1930, 44 F.2d 312; and state consent to federal incarceration in Kirk v. Squier, 9 Cir., 1945, 150 F.2d 3, certiorari denied, 1945, 326 U.S. 775, 66 S.Ct. 265, 90 L.Ed. 469. Johnston v. Wright, 9 Cir., 1943, 137 F.2d 914, was decided upon other grounds, and the Court found insufficient evidence

There is no doubt that permission may be granted to the state. In Ponzi v. Fessenden, supra, the court was primarily concerned with the question of consent. The Supreme Court held that the federal attorney-general or his representative was qualified to consent that a federal prisoner be taken before the state court for trial.

### III.

If the state court does have jurisdiction, but will decline to exercise it *if* the federal court makes objection, we are confronted with this question: Does appellee have standing to raise the question of exercise of state court jurisdiction over him? Appellant argues that *only* the federal court or authorities may raise such an issue.[14] Appellee argues that the accused may raise the question.

It should be noted that in Stamphill v. Johnston, supra, we said, 136 F.2d at page 292:

> " * * * the arrangement made between the two sovereigns, the state and federal governments, does not concern the defendant who has violated the laws of each sovereignty *and he cannot in his own right demand priority for the judgment of either.*" [15] (Emphasis supplied.)

We still adhere to the view there expressed that an accused has no standing to dispute arrangements which may be made between sovereigns when he has violated the laws of both. But we also believe that the accused has a right, in some manner, to bring to the attention of the court first taking jurisdiction over him (here the lower court) the fact that proceedings have been started against him in a state court.[16] Once notice of the proceeding in the state court is brought to the federal court's attention, whatever interest or standing the accused may have is at an end, and it is for the federal court to then decide whether the state court's proceeding infringes upon, or interferes with, the jurisdiction of the federal court. In short, the accused has no control over the federal sovereign as to whether it will, or will not, consent to exercise of state jurisdiction over him.

In the case at bar we believe that the petition for a writ of habeas corpus was a suitable method by which appellee could bring before the lower court the fact of the pending proceeding against him in the California court. Here, the lower court issued the writ, thus indicating its intention that orderly administration of justice required that its jurisdiction over appellee should not be disturbed and should remain exclusive during the period of his probation. Had appellee's writ been denied, there would have been no obstacle to the state proceeding against appellee.

---

of prior state jurisdiction to pass upon the question in Vane v. United States, 9 Cir., 1918, 254 F. 28. While this list of cases exceeds the number of cases from this Circuit cited to us by counsel, it is not intended to be an exhaustive compilation of cases on this problem.

14. From the record it appears that this question may be moot, as appellant seems to have conceded in the lower court that the accused may not raise the question in the second court (State here), but may raise it only in the first court (Federal Court here), if at all. Since a waiver is not readily found, and since the statement of appellant could be considered an attempted explanation of cases rather than an admission, we will give consideration to this question.

15. Other cases state this rule. E. g., Ponzi v. Fessenden, supra; Morse v. United States, 1925, 267 U.S. 80, 45 S.Ct. 209, 69 L.Ed. 522; Rawls v. United States, 10 Cir., 1948, 166 F.2d 532; Stripling v. United States, 10 Cir., 1949, 172 F.2d 636; Powell v. Sanford, 5 Cir., 1946, 156 F.2d 355; Kirk v. Squier, supra.

16. Or, in the words of the District Judge below: "I cannot believe that the right does not lodge in the individual because it is his liberty that is involved, *while at the same time he has no control over the sovereign as to whether or not they will consent.* But, nevertheless, if they have not consented it seems to me that it is his liberty that is involved and he has the right to bring the petition." (Emphasis supplied.)

We are not intimating that (as here) a petition for a writ of habeas corpus, followed by the court's ruling thereon, is the sole and only procedure by which the lower court could protect its jurisdiction. There may be other equally satisfactory methods by which to inform the lower court of pending state court proceedings. It is sufficient to say that in the instant case appellee's petition for a writ of habeas corpus did afford an appropriate and expedient method by which to bring the fact of state court proceeding to the attention of the lower court, and that issuance of the writ was within the power of the lower court.[17]

In his dissent, Judge Chambers has discussed hypothetical situations which might possibly give rise to a jurisdictional conflict between state and federal courts over the right of either sovereignty to apprehend and/or proceed to prosecute a person then at large under a grant of probation from one or the other of such courts, but we think that his concern is not justified by the specific facts before us. Conceding that abuse of the privilege of the writ by state prisoners appealing to federal courts has approached farcical proportions, we cannot conclude that the important issue here tendered is of the frivolous nature characteristic of so many applications. In any event, this case poses an issue in the administration of law worthy of consideration. Attention is called to an article in the publication "Federal Probation" for March, 1956, page 54, commenting on the case at bar.

The court below pointed out (and held) that it was not destroying the jurisdiction of the State Court, and we quote in the margin its pertinent comments on this issue.[18]

17. In re Neagle, 1890, 135 U.S. 1, 10 S. Ct. 658, 34 L.Ed. 55; Ex parte Robinson, 6 McLean 355, C.C. 1855, apparently indicate that the Judiciary Act empowers the federal courts to issue a writ of *habeas corpus* to protect validly acquired federal jurisdiction. Cf. Mr. Chief Justice Hughes in Bowen v. Johnston, 1939, 306 U.S. 19, 26–27, 59 S.Ct. 442, 446, 83 L.Ed. 455: "It must never be forgotten that the writ of habeas corpus is the precious safeguard of personal liberty and there is no higher duty than to maintain it unimpaired. * * * But it is equally true that the rule [requiring resort to appellate procedure when the trial court has determined its own jurisdiction] is not so inflexible that it may not yield to exceptional circumstances where the need for the remedy afforded by the writ of *habeas corpus* is apparent. Among these exceptional circumstances are those indicating a conflict between state and federal authorities on a question of law involving concerns of large importance affecting their respective jurisdictions. [Cases cited.]"

18. "So the matter comes down to two questions: whether or not the person himself can raise the question of jurisdiction or whether or not the sovereign can. I hold that the person can.

"It comes down to whether or not there must be a consent [here from the Federal court granting probation] or whether or not mere failure to object is consent, and under the case of Grant v. Guernsey—which, incidentally, relies upon the old case of Taylor v. Tainter in 16 Wall. [366, 21 L.Ed. 282]—there must be an affirmative act of consent either by delivery or, as in Ponzie v. Feddington [Ponzi v. Fessenden], where the Attorney General consented, or there must be some conduct by which the consent can be implied. In other words, there must be an actual or an implied consent rather than a mere failure to object. I hold that there must be a consent, that there has been no consent in this case, and under Grant v. Guernsey the petitioner is entitled to the writ. In doing that, I do not think that I am destroying the jurisdiction of the State; I am merely delaying it because, as I view the State's statutes, you can preserve your jurisdiction and preserve the statute of limitations over this defendant by causing him to be indicted by your [State] grand jury and merely holding that indictment until the expiration of the term of his [Federal] probation. If, for instance, on the last day of his probation he were to kite another check he could be brought before Judge Carter [the Federal Judge granting probation] and right then he would begin to serve his [Federal] sentence of 10 years, 10 years from that date, and not 10 years from the date of the judgment. So the defendant here has hanging over him a pretty heavy sword by a very

For the reasons here stated, the judgment of the District Court is affirmed.

CHAMBERS, Circuit Judge (dissenting).

I cannot accept the conclusion that the United States District Court for the Southern District of California was correct in ordering the California state sheriff of San Diego County to release the prisoner because he was "insulated" with an impenetrable coat of immunity: federal probation.

When federal courts grant habeas corpus petitions for state prisoners after conviction in a state court (I mean: due process habeas corpus), the federal courts are exercising what our Supreme Court holds is a paramount right and duty of the judicial system of the sovereignty of the United States itself. Much different is the variety of habeas corpus we have here. If the federal court in San Diego can say to the state sheriff of San Diego County, "Don't touch our probationers without our consent", then an inescapable corollary is that a state prisoner, arrested by federal agents and indicted by a federal grand jury, can rush into his state court, sue out a writ of habeas corpus and get a state order to the United States marshal of the Southern District of California commanding the release of the state probationer.

And in this competitive field of judicial intermeddling I am sure that the states will come off best. I believe it can be proved (I have no statistics, but it is my observation) that the percentage of first offenders before the bar of justice runs higher in the state courts than in the federal courts. Consequently, the occasion for state interference will be higher percentage-wise. And it distresses me to think of all the state probationers that are here and now removed from prosecution in the federal courts except by the grace of the state courts.

Suppose a state probationer violates the federal kidnapping statute. The Federal Bureau of Investigation finds the kidnapper. Can its officers arrest the culprit? Must they get the permission of a state judge to arrest him? If they can arrest him but must get permission to prosecute, how long can they hold the kidnapper while they wait for permission? If the judge who hears the habeas corpus decides that the other jurisdiction (by grace of his discretion) should prosecute, then may the prisoner appeal, claiming an abuse of discretion?

slender thread, and if you [State] should indict him he will have two swords hanging over him. But I will hold that the petitioner is entitled to the grant of the writ and hope that the County of San Diego will take it up to the Ninth Circuit and let them settle in this District whether or not it is a failure to object or whether or not it must be a consent, expressed or implied, and clarify their statements about the right of the individual to bring the petition. I cannot believe that the right does not lodge in the individual because it is his liberty that is involved, while at the same time he has no control over the sovereign as to whether or not they will consent. But, nevertheless, if they have not consented, it seems to me that it is his liberty that is involved and he has the right to bring the petition."

After the foregoing expression of views by the lower court, the Deputy District Attorney for San Diego County an-

nounced to the court that he had "come to this conclusion, that when they say the defendant cannot raise the question they mean by that that he cannot raise the question in the second [State] sovereignty." The lower court agreed with him that appellee in this case could not raise such a question in the State Court. Counsel for the State also agreed that appellee could raise the question of jurisdiction in the lower court "because who else could? It seems, as your Honor has said, obvious that the defendant must be able to protect himself, and if he can raise the question at all he ought to be able to raise it in the court that could do him some good." Counsel for the State also agreed with the lower court that it was the only court where appellee could raise the question—that "the first sovereignty [Federal] must raise it in the second sovereignty, but the defendant may raise it in the first sovereignty, the way I look at it."

I think of the huge number of juveniles throughout the country who are "probationers" of state juvenile courts. Can a juvenile state probationer go out, rob a national bank, get caught by the Federal Bureau of Investigation and then taunt his arrestor with, "You can't arrest me. You can't prosecute me. My juvenile judge said you couldn't touch me."

It is not inconceivable that certain people may accept the invitation we issue here, go out, shop for a friendly state court, commit some minor offense, get themselves on probation, and then venture forth to violate federal statutes with their state cloaks of immunity wrapped about them.

Apparently, part of the court's opinion is grounded on the fact that the state offense here was committed before the federal offense was committed. Also, the decision seems to be bottomed in part on the circumstance that San Diego County, the state jurisdiction, is wholly within the United States District of Southern California. The questions which will follow are not here for determination, but surely we must stop and think the matter through. Will we deny the great writ to one who commits the state offense after he goes on federal probation but grant it if his state offense precedes his federal offense in point of time? How can a logical distinction in the foregoing instances be made in terms of a court's inherent power to proceed?

Suppose the federal probation is at San Diego and the subsequent state offense and arrest are in Alameda County, California, in the Northern District of California. The application for habeas corpus must be made in the United States District Court for the Northern District. How will that work? Will a judge of the federal court in the Northern District exercise the Southern District's (the court which put the prisoner on probation) discretion as to whether state prosecution should go ahead?

At our request, the United States was invited to appear herein and state its views. As a consequence, the United States attorney for the Southern District appears and files as a friend of the court a brief upholding the prisoner's (Schmittroth's) position. It will be interesting to read his brief when the Superior Court of San Diego, California, grants an order on habeas corpus releasing from the custody of the United States marshal of the Southern District of California a prisoner awaiting trial for some serious federal crime. Where will the district attorney stand then? In this two-way street, how can he assert the right of the federal government to meddle and deny the right to the state.*

The only authority squarely in point is the two-to-one Tenth Circuit case of Grant v. Guernsey, 63 F.2d 163. There the majority's reason does not appeal to me and there is nothing yet that compels this court to follow it, if reason be absent from it. I would disregard it.

In the field in which we are working, we have the matter of adjusting and accommodating a dual system of courts sitting side by side in a field. Most of our rules on "who gets the prisoner" have been worked out on a basis of comity. I do not regard the rule that the governmental jurisdictional entity which first arrests a prisoner (that is, of course, one not on probation), who is wanted by two jurisdictions, may proceed to vindicate its authority first as a rule based on concepts of fundamental power. I think the rules are based on comity, that is, upon considerations of what is orderly, what will cause the least friction. I do

---

* While much is said in the within opinion to the effect that the federal courts cannot claim a right to interfere with prosecution by states of federal probationers, without at the same time granting a similar right to states when the situation is reversed, this opinion is not based on such a narrow ground. Because if it is good for federal courts to stop state prosecutions, it is good for states to stop federal prosecutions.

**610**

not think such a rule is one of "jurisdiction" in the fulsome sense of power. True, as rules are expressed over and over again, it is easy to attach the word "jurisdiction." Similarly, a prisoner of one governmental unit serving penal time is left alone by another governmental unit wanting him, unless the custodian consents to prosecution elsewhere. I think that is a rule of comity, more than one of absolute power.

I recognize, if the federal district judge when he undertook to put Schmittroth on probation considered the offense committed in San Diego County against the State of California in decreeing probation, some harshness and unfairness may arise by a state prosecution for an offense considered by the federal judge in fixing the probation. But surely a decision to grant habeas corpus cannot rest on whether the judge granting probation took into consideration possible pending offenses in another separate and distinct jurisdiction. That would be a bucket of eels.

The best solution in this field of accommodation is to require the jurisdiction not holding the prisoner in confinement or not proceeding to prosecute to recede in its grasp for power. Leave the matter to the good sense prevailing usually in the co-ordinate jurisdiction. To do otherwise is to set up judicial strife and conflict with the consequential resultant contempt for the law.

When one court starts "enjoining" or "prohibiting" another court or releasing another's prisoners, it is always unpretty. When it is done, the call and duty ought to be clear and distinct. I do not find that call to duty here. I think it is interposition.

To hold that the federal district court was right requires us to embrace a fiction that one who is on probation is in the "custody of the law." When that fiction produces unseemly judicial conflict, as this does, the fiction ought to give way. One can be subject to a court's orders without being in the full "custody of the law," without having a protective casing of immunity.