Bert STRAND, Sheriff of San Diego County, State of California, Appellant,

v.

William SCHMITTROTH, Appellee.

No. 14733.

United States Court of Appeals Ninth Circuit.

Aug. 2, 1956.

For former opinion, see 233 F.2d 598.

James Don Keller, Dist. Atty., Claude B. Brown, Deputy Dist. Atty., County of San Diego, San Diego, Cal., Edmund G. Brown, Atty. Gen., Clarence A. Linn, Chief Asst. Atty. Gen., Arlo E. Smith, Dep. Atty. Gen., State of California, for appellant.

Oscar F. Irwin, San Diego, Cal., for appellee.

Laughlin E. Waters, U. S. Atty., Louis Lee Abbott, James T. Barnes, Asst. U. S. Attys., Los Angeles, Cal., amici curiae.

Before HEALY, BONE and CHAMBERS, Circuit Judges.

CHAMBERS, Circuit Judge (dissenting).

The attorney general of the State of California has petitioned in behalf of Sheriff Strand for a rehearing en banc. Our Rule 23 reads as follows:

"A petition for rehearing may be presented within 30 days after judgment. * * *

"All petitions for rehearing, and motions for extensions of time to file them, shall be addressed to and be determined by the court as constituted in the original hearing.

"Should a majority of the court as so constituted grant a rehearing and either from a suggestion of a party or upon its own motion be of the opinion that the case should be reheard en banc, they shall so inform the Chief Judge. The Chief Judge shall thereupon convene the active judges of the court and the court shall thereupon determine whether the case shall be reheard en banc."

In conformity with our practice under the above rule, Judge Healy, Judge Bone and I have treated the petition as being before us who constituted the court for the consideration of the appeal when it was first heard. We have considered the "petition for an en banc hearing" as a "suggestion of a party."

First, I vote for a rehearing. Second, I vote for a rehearing en banc. Neither of my associates joins me. In this posture of having the necessary will, but not the necessary votes, I desire to further comment on the case with particular reference to the petition for rehearing.

The federal statutes permit us to sit en banc.[1] Our work load is such that we cannot hear all cases en banc. There is precedent in some circuits to rarely, if ever, grant rehearings en banc. Something can be said for that policy. In another circuit they are often granted. The latter practice tends to make not one appeal but two appeals from the district judgment. If certiorari is granted, that is three. A loose policy on rehearings en banc can stop a busy court from getting its work done and is too burdensome to litigants.

I prefer a policy on en banc rehearings somewhere in between the two extremes. I think the statutory authority was provided with intent that it be used now and then. Of course, in such a policy the selection of cases for en banc rehearings may demonstrate some inconsistencies. I think important factors in reaching a decision on holding a hearing en banc are: 1. The existence of a dissent. 2. The existence of a pronouncement about which one may suspect his associates not yet in the case may very well disagree. 3. The presence of a decision that departs from historical operating procedure in matters such as Schmittroth's

1. See 28 U.S.C.A. § 46(c).

case does. 4. The announcement of a rule which may have far-reaching consequences beyond the plight of the individual before the court.

I think the only possible answers to my suggested tests on Schmittroth's case may be: 1. If the question is so important, the Supreme Court will grant certiorari, and 2. Our decision may not be widely read. Here in Schmittroth I do not accept either. I think the case is so important it should not have to wait for certiorari. And my second proposition, although lightly stated, has no validity.

Within our court as shown by our case of Western Pacific R. Corp. v. Western Pacific R. Co., 9 Cir., 197 F.2d 994, at page 1012 et seq.[2] there are two views. The present majority of our whole court, as evidenced by the continuation of Rule 23, denies a rehearing en banc unless two of the division of three which heard the case vote for it. This does not eliminate the underlying power to change the rule or for a majority of all to join to draw the case into an en banc hearing.

To date, I have thought that for other circuit judges outside a panel of three who heard the case to move in and take a case into the body of the whole court was inadvisable, absent the consent of two judges who heard the case. But I now think at some time not too distant we may have to turn to the policy of letting the whole court vote initially on the question; that is if the standard I feel is evinced here is continued.

The majority opinion here certainly needs clarifying. Does it rest on federal supremacy over the states? Although such is suggested in the majority opinion, heretofore I have closed my eyes to it, for it is unthinkable that a federal Dyer Act case rests on any higher judicial pedestal than a state's case against the same defendant for passing worthless checks. And I cannot believe the decision can rest on any point of time sequences, of dates of commission or of dates of prosecution. I have taken the majority's

decision to be grounded on a theory of "on probation is to be in custodia legis," the same as if the defendant were held in durance vile. That, of course, means a state probationer will have to be released from the U.S. marshal who arrests him while he is on state probation, absent consent of the state. Indeed, under the majority's opinion, can a U.S. marshal feel safe in arresting such a probationer?

In my previous dissent, I chose to meet the decision head-on on the issue of its intrinsic merit. However, I now point out that it would appear clear that Schmittroth had no standing to vindicate the claimed authority of the U.S. District Court for the Southern District of California. I believe the recent case of United States ex rel. Moses v. Kipp, 7 Cir., 232 F.2d 147, so holds. I believe the case is correct.

Also, since the decision herein on May 3, 1956, very interesting intelligence has come properly before this court. The attorney general of California has advised court and counsel that the order to release Schmittroth made by the district court has been obeyed by Sheriff Strand, although he still holds the original warrant for Schmittroth's arrest. Presumably he will do his duty and will rearrest Schmittroth if he can get the chance again and orders of this court do not block him. But the attorney general further advises us that the State of California has virility if not respect for the intendments of the majority decision. It seems that Schmittroth's criminal activities extend all of the way from San Diego on the Mexican border to Eureka in Humboldt County, California, hard by the Oregon border. After, Schmittroth was released by Sheriff Strand, Schmittroth being out on probation, committed the state crime of forgery at or near Eureka. He was rearrested in Humboldt County and there tried for the crime of forgery, convicted, sentenced to imprisonment and is now lodged in California's

2. On certiorari, the case appears as Western Pacific Railroad Case, 345 U.S. 247, 73 S.Ct. 656, 97 L.Ed. 986.

Folsom prison. The parties agree that this sequel does not make moot this case out of San Diego. I join in the same view.

Our problem in this case is not to inquire if the district court abused its discretion. The question is the right to exercise the discretion. Of course, it is obvious that the district court released a man who was hardly worthy of release.

But it is clear that the questions I asked in my previous dissent were not idle. There I posed the question of what would happen if Schmittroth were now rearrested in Alameda County (Oakland) after his release at San Diego. I did not have the prescience to know it would be Humboldt County. One may say, Schmittroth can get out another writ. Then we cannot forbid it just because this time he is out of the Southern District of California, the seat of his probation, and now in the Northern District of California. Or, can we? If he sues in the Northern District surely the Northern District will not exercise the Southern District's discretion on whether Schmittroth should be prosecuted or confined by the state. Or, will it? Moreover, we shall not deny him relief at Folsom because he asked for the writ after instead of before he was convicted at Eureka. Or, shall we?

Why state these problems when they are not before us for decision? The reason for the questions is, I think, that their mere statement fully reveals untidy overtones of our basic decision and demonstrates its error.

I think the far-reaching implications of the majority's holding and the subsequent sequence richly merit consideration of the original decision by our court en banc, but I am helpless because the simple arithmetic of one plus one is greater than the sum of one plus none.

Appendix to Dissent on Rehearing.

As our order was ready to go down on Sheriff Strand's petition for rehearing, a supplemental memorandum has come in from the U.S. District Attorney at Los Angeles, which indicates the government has taken a long second look at the business of letting Schmittroth "call the tune" and now is wondering about the wisdom of the majority opinion herein. See 9 Cir., 233 F.2d 598. His new brief clearly illustrates the problems the majority opinion has set up for law enforcement agencies. So trenchantly does the memorandum of the district attorney enunciate the confusion we have so recently created that I deem it advisable to set forth in totidem verbis the entire body of his memorandum. It is as follows:

"By order of November 29, 1955, this Honorable Court requested the Attorney General of the United States to file within 30 days an amicus curiae brief outlining the position of the United States on the questions presented in the instant appeal. Thereafter, pursuant to said order, the United States filed an amicus curiae brief stating its then position and in general sustaining the views of the appellee Schmittroth.

"On May 3, 1956; this Honorable Court handed down its opinion upholding generally the views expressed in the amicus curiae brief. Subsequently, on June 3, 1956, appellant filed his able petition for a rehearing by this Honorable Court sitting in banc.

"After a careful study of the opinion in the light of the petition for rehearing, the United States has reappraised its position in this matter. Because of the importance of the questions here involved and the somewhat chaotic conditions prevailing among the various circuits in regard thereto, it is felt that a definitive pronouncement by the entire court would have a determinative effect in dispelling some of the doubt which presently exists as to the respective powers of state and federal courts over dual violators. Although a direct conflict exists between the various circuits, it is by no means

certain or even probable that the Supreme Court will have the opportunity to settle the point at this time. Therefore, while the United States does not necessarily agree in entirety with the views expressed by the appellant in its petition for rehearing, the United States is constrained by reason of the foregoing to join with appellant in respectfully requesting that this Honorable Court grant an in banc rehearing of this matter so that certain points in the original opinion may be clarified and expanded. More specifically the United States as amicus curiae urges elaboration and discussion of the following points and questions arising from the original opinion. As used hereinafter the first sovereign acquiring jurisdiction will be referred to as "first sovereign" and the second sovereign acquiring jurisdiction will be denominated "second sovereign". Unless otherwise stated in the case they are respectively the sovereignties of federal and state government.

"I.

"Granting that an accused has no standing to, himself, raise the question of exercise of jurisdiction by the second sovereign over him but does have a right to bring to the attention of the first sovereign the fact that proceedings have been started against him by the second sovereign, the question remains whether the petition for writ of habeas corpus is a proper means by which to notify the first sovereign, in that habeas corpus is a well defined adversary proceeding in which the petitioner is a litigant with definite procedural rights in both trial and appellate courts.

"II.

"Whether by bringing habeas corpus in the courts of the first sovereign to test detention by the second sovereign an accused is not in effect himself raising the objection to his detention by the second sovereign in contravention to the statement of the majority opinion that he lacks standing to so object?

"III.

"Admitting, as the opinion does, the validity of the jurisdiction of the second sovereign prior to objection by the first sovereign, a question arises as to whether the writ of habeas corpus—running as it does solely to test jurisdiction—is properly used to vitiate or divest the jurisdiction of the second sovereign which until that time was admittedly valid? To state the question in another way, does the great writ run merely to test the validity of the jurisdiction under which the petitioner is detained or can it also be used as a means of attacking and divesting of future jurisdiction judicial proceedings, which, until the issuance of the writ, were admittedly valid?

"The opinion admits the validity of the state court to try the accused, but seems to allow this admittedly valid jurisdiction to be set aside by habeas corpus the sole function of which is to search out jurisdictional defects existing at or before the time of its issuance and not to act in the nature of prohibition against further action.

"IV.

"Whether under the provisions of 28 U.S.C. 2241 habeas corpus should have issued in this case?

"V.

"Whether the jurisdiction of the second sovereign to detain and try a probationer of the first sovereign prevails in absence of express assent by the first sovereign?

"VI.

"Whether this circuit wishes to adopt the decision of a divided court in Grant v. Guernsey, 10 Cir., 63 F. 2d 163, which is at a variance with the indicated view of a majority of the circuits and was probably sub-

sequently overruled sub silentio by the Tenth Circuit. In Craig v. Hunter, 10 Cir., 1948, 167 F.2d 721; Rawls v. United States, 10 Cir., 1948, 166 F.2d 532; Werntz v. Looney, 10 Cir., 1953, 208 F.2d 102.

### "VII.

"Whether any objection by the first sovereign to the action of the second sovereign must be asserted in the court of the second sovereign?

### "VIII.

"Whether the result reached in the majority opinion disabling the state from acting herein is based upon the lack of jurisdiction of the second sovereign, Federal supremacy or the exercise of the doctrine of comity, either mandatory or permissive?

### "IX.

"Whether, under the majority opinion, a judge of a state court having acquired first jurisdiction of an accused probationer could compel, by habeas corpus, federal officers to release said accused probationer from federal detention? In the language of the dissent is this really a "two way street?"

### "X.

"Whether probation from the first sovereign completely insulates the probationer from prosecution by subsequent sovereigns during the term of his probation?

### "XI.

"Whether a person on probation is to be considered in the custody of the law for all purposes?

### "XII.

"Whether under the majority opinion the immunity of a Federal probationer from State prosecution extends to all State offenses for which he might be tried while on probation or only to those committed prior to the offense for which he was on probation?

### "Conclusion

"Because it is felt by the United States that the foregoing constitute grave questions vitally affecting the future relations of Federal and State law enforcement, the United States hereby respectfully urges this Honorable Court to grant the petition of the appellants for a rehearing by the Court in banc in order that these questions may be clarified and conclusively determined."